STATE, DEFENDANT IN ERROR, v. CAMILLE CRIVELLI, PLAINTIFF IN ERROR.

Submitted March 27, 1916—Decided June 19, 1916.

1. On the trial of a man for murder of his wife by poison with morphine or laudanum, it was proper to admit evidence (1) of a physician who made the *post mortem* examination that the condition of the brain and blood led him to suspect poison; (2) of a chemist that a jar handed him contained a liquid "said to be the stomach contents" of one whose death was attributed to poison, where the liquid was proved by witnesses from whom the chemist received his information to be what it was said to be; (3) of a chemist who had examined the contents of the deceased's stomach as to the quantity of morphine or laudanum that was likely in the system of the deceased or in the stomach prior to death; (4) to show defendant's relations with another woman and his effort to resume sexual relations with her just before his wife's death; (5) that there was a lack of any appearance of grief on his part at his wife's death; (6) of an expert witness as to what portion of four grams of morphine or opium would likely be absorbed through the system; (7) it was also proper to cross-examine the defendant as to whether he had expressed the pleasure he had had in his intercourse with the other woman, and upon his denial, to call the witness to contradict him.

2. A charge, in reply to the jury's question whether they must accept circumstantial evidence, that they must accept all evidence, coupled with the charge that it was a question of what they believed of the testimony, was proper.

On error to the Union Oyer and Terminer.

For the state, *Alfred A. Stein.*

For the plaintiff in error, *J. Victor D'Aloia.*

The opinion of the court was delivered by

SWAYZE, J. The defendant was convicted of the murder of his wife by administering laudanum. Most of the questions raised relate to the admission of evidence.

1. We see no error in allowing the physician, who made the *post mortem* examination, to testify that the condition of the brain and blood led him to suspect poison. It was merely an explanation of his subsequent action which resulted in finding poison in the stomach of the deceased.

2. The objection that the chemist testified that a jar handed to him contained a liquid which was "said to be the stomach contents" of the deceased is untenable. The language was the cautious expression of the witness. That the liquid was in fact what it was said to be was proved by witnesses having knowledge from whom the chemist had received his information.

3. We see no valid objection to the chemist testifying as to the quantity of morphine or laudanum that was likely in the system of the deceased, or in the stomach prior to death. He knew the quantity actually found; he had expert knowledge which enabled him to tell whether any had probably been absorbed in her system; he did not attempt to specify the quantity with exactness, but merely testified that there was a large quantity present, considerably larger than was found; that such was certainly the fact if death resulted from a dose of the drug. This was no more than saying that the quantity actually found probably was not sufficient to produce death, but that its presence indicated that more had been taken than was found. This is well within the bounds of his knowledge as an expert.

4. The testimony as to Mrs. Ludka's conversation with the defendant about his relations with Mrs. Meyer was competent, because it showed his effort, just before his wife's death, to resume the sexual relations with Mrs. Meyer which had been interrupted at the time of his assault a few months before upon the man with whom she was living as a wife. His relations with Mrs. Meyer furnished an explanation of, if not a motive for, the alleged act of poisoning his wife, and tended strongly to corroborate the theory of the state. For the same reason the testimony as to the assault on Meyer was permissible. It formed a part of the history of the relations between the defendant and Mrs. Meyer and explained

their discontinuance and the efforts made by the defendant to have them resumed, and rendered it more probable that he would seek to remove any obstacle that there might be to the resumption of those relations.

5. We see no objection to the evidence as to the lack of any appearance of grief on the part of the defendant at the death of his wife, who had come to him with his daughter from Italy only a few days before.

6. It was proper to ask Dr. Mravlag, as an expert, what portion of four grams of morphine or opium would likely be absorbed through the system. His answer seems to have been that he did not know—an answer which was harmless—and his testimony the next day that the drug was absorbed more or less rapidly, depending upon the form it was in, was relevant to the claim that the amount actually found was only a part of what must have been taken by the deceased.

7. It was proper to ask the defendant on cross-examination if he did not express to Giordano the pleasure he had had in his intercourse with Mrs. Meyer, and upon his denial, to call Giordano to contradict him. The matter was not a collateral matter, but bore directly upon the state's case. Whether it should have been allowed in rebuttal, as it was, was a matter within the discretion of the trial judge, and that was not abused.

8. The objections to the charge of the court do not raise any question of law. They go rather to the court's way of stating the questions as to the facts for the jury to decide. The judge seems to have stated them with entire fairness. He certainly went no further than is permitted under our practice. His reply to the jury's question whether there was any direct evidence that the drug was administered by the defendant, was merely a statement of the evidence and an instruction that it was for the jury to say whether it was direct or not, depending on what they found the facts to be. His reply to the question whether the jury must accept circumstantial evidence was proper. When he said they must accept all evidence, he clearly meant only that they must receive all evidence that the court thought admissible, not that

they must credit it all; for he immediately said it was a question of what they believed of the testimony.

We find no error and the judgment is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GAR-RISON, SWAYZE, TRENCHARD, PARKER, MINTURN, BLACK, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 14.

*For reversal*—None.