249 N.J. Super. 266 (1991)
592 A.2d 300
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JEFFREY PINDALE, SR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 20, 1991.
Decided June 28, 1991.
*272 Before Judges O'BRIEN, SCALERA and KEEFE.
Wilfredo Caraballo, Public Defender, attorney for appellant (Stephen W. Kirsch, Assistant Deputy Public Defender, of counsel and on the brief).
Robert J. Del Tufo, Attorney General, attorney for respondent (Arthur S. Safir, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
Defendant appeals from his conviction of three counts of first degree aggravated manslaughter (N.J.S.A. 2C:11-4a) and two counts of fourth degree assault by auto (N.J.S.A. 2C:12-1c). Defendant was sentenced to three consecutive 20-year terms with a 10-year period of parole ineligibility on each aggravated manslaughter conviction, and two 18-month concurrent terms on the two assault by auto convictions.[1] On each aggravated manslaughter conviction the judge imposed a $2,500 penalty payable to the Violent Crimes Compensation Board, and $30 penalties on each assault conviction. Thus, defendant's aggregate sentence is 60 years with a 30-year period of parole ineligibility and $7,560 in VCCB penalties. We affirm in part and reverse in part.

I
On March 5, 1988, defendant, his wife and two friends, Al Stavoli and Maurice Davis, had dinner together and began *273 drinking at the Pindale house in Vineland. Eventually, they went out for a ride in a pick-up truck defendant had borrowed from the automobile dealership where he worked. When the truck malfunctioned they returned to the house and got into defendant's new Z-28 Camaro which he had purchased four days earlier. The four were drinking beer from a six pack as they were riding. The vehicle had a T-top, the panels of which defendant removed during the course of the ride. At one point, one of the passengers stood up through one of the openings. When a police officer observed this he began to pursue them. During the pursuit, defendant threw the remaining beer out the window and increased his speed in an effort to elude the police officer.
A high-speed chase ensued. Although the vehicle stopped at the first stop sign, it went through several subsequent stop signs and red lights in which speeds escalated to 95 or 100 miles per hour. At one point, the vehicle's headlights were turned off. A witness observed the Z-28 traveling at approximately 95 to 100 miles an hour on Chestnut Street with its lights off, go through a red light at the intersection of Delsea Drive, and collide with a pick-up truck headed south on Delsea Drive.
As a result of that collision, the driver of the pick-up truck and his passenger were both killed. Al Stavoli suffered injuries from which he died a few days later. Wanda Pindale suffered severe physical injuries, including a fractured pelvis, multiple skull fractures, broken nose, broken jaw, and loss of her right eye. Maurice Davis also suffered severe injuries requiring a rod in his femur and a metal plate in his head. He still suffers from memory loss and difficulty in speech. Defendant sustained severe chest injuries from which he has substantially recovered.
At trial, a factual issue was projected as to who was driving defendant's car at the time of the fatal collision. Wanda testified that defendant was driving, she was in the front passenger seat, Stavoli was seated behind defendant, and Davis *274 behind her. Wanda said it was she who had stood up through the open T-top, which apparently initiated the high-speed chase resulting in tragic consequences. Defendant did not testify at the trial, but through his witnesses attempted to show that Wanda was driving the vehicle at the time of the collision. The jury resolved that conflict by their verdict, concluding that defendant was the driver.

II
On this appeal, defendant makes the following legal arguments:
POINT I DEFENDANT'S FOURTEENTH AMENDMENT DUE PROCESS RIGHTS WERE SERIOUSLY ABRIDGED WHEN THE JUDGE ALLOWED THE STATE REPEATEDLY TO DEMONSTRATE AND ARGUE TO THE JURY DEFENDANT'S FAILURE EITHER TO VISIT HIS INJURED FRIENDS IN THE HOSPITAL OR INQUIRE ABOUT THEIR RESPECTIVE CONDITIONS  AN ABSOLUTELY IRRELEVANT, BUT HIGHLY INFLAMMATORY TOPIC; UNDER EVID.R. 7(f) OR, ALTERNATIVELY EVID.R. 4, THIS EVIDENCE SHOULD HAVE BEEN EXCLUDED.
POINT II THE PROSECUTOR'S SUMMATION FAR EXCEEDED THE BOUNDS OF PROPRIETY IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS AND EVID.R. 47. (Not Raised Below)
POINT III CRITICAL PORTIONS OF THE REBUTTAL TESTIMONY OF DETECTIVE MICHAEL NEWTON, PATRICIA POMPPER AND TIFFANY HINCKLEY WERE PURE HEARSAY, INADMISSIBLE UNDER EVID.R. 63, AND WERE SO DEVASTATING TO THE DEFENSE CASE THAT THEIR ERRONEOUS ADMISSION WARRANTS REVERSAL OF DEFENDANT'S CONVICTIONS. (Not Raised Below)
POINT IV THE SENTENCE IMPOSED ON DEFENDANT IS MANIFESTLY EXCESSIVE.
Evidence that the vehicle was operated recklessly as defined in N.J.S.A. 2C:2-2b(3) and that defendant was the driver was overwhelming. Thus, the evidence clearly supported the convictions of fourth degree assault by auto under N.J.S.A. 2C:12-1c and would support convictions of three counts of death by auto (N.J.S.A. 2C:11-5) as charged in the third, fourth and fifth counts of the indictment, which had been dismissed as lesser included offenses. Had defendant had been convicted of death by auto and not aggravated manslaughter, we would find the arguments advanced by him in Points I and II harmless error. *275 However, because defendant was convicted of aggravated manslaughter, we address those issues.

III
"Criminal homicide constitutes aggravated manslaughter when the actor recklessly causes death under circumstances manifesting extreme indifference to human life." N.J.S.A. 2C:11-4. Thus, the element which elevates third degree death by auto to first degree aggravated manslaughter is that the offense was committed "under circumstances manifesting extreme indifference to human life."[2] Therefore, the existence of evidence of that fact looms up as an extremely important element. It elevates the offense from third degree, with a presumption of nonimprisonment for a person without a criminal record, N.J.S.A. 2C:4-1e (unless he was operating the vehicle while under the influence of intoxicating liquor, N.J.S.A. 2C:11-5b),[3] to a first degree crime requiring not only a presumption of imprisonment under N.J.S.A. 2C:44-1d, but an increase in the ordinary maximum term of imprisonment from 20 years for a crime of the first degree, N.J.S.A. 2C:43-6a(1), to 30 years. N.J.S.A. 2C:11-4c. Yet, this significant elevating *276 phrase is not defined in the New Jersey Code of Criminal Justice (Code).
As initially enacted by the Laws of 1978, c. 95, criminal homicide was divided into murder, manslaughter or death by auto. The provision for manslaughter simply provided:
2C:11-4. Manslaughter.
a. Criminal homicide constitutes manslaughter when:
(1) It is committed recklessly; or
(2) A homicide which would otherwise be murder under section 2C:11-3 is committed in the heat of passion resulting from a reasonable provocation.
b. Manslaughter is a crime of the second degree.[4]
N.J.S.A. 2C:11-4a(1) was identical to the language of the Model Penal Code, § 210.3(1)(a).
In § 210.2 of the Model Penal Code, murder is defined as follows:
(1) Except as provided in Section 210.3(1)(b), criminal homicide constitutes murder when:
(a) it is committed purposely or knowingly; or
(b) it is committed recklessly under circumstances manifesting extreme indifference to the value of human life. Such recklessness and indifference are presumed if the actor is engaged or is an accomplice in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery, rape or deviate sexual intercourse by force or threat of force, arson, burglary, kidnapping or felonious escape.
(2) Murder is a felony of the first degree [but a person convicted of murder may be sentenced to death, as provided in section 210.6].
In the Comment to this provision in the American Law Institute Model Penal Code and commentaries, the authors say as to "Reckless Homicide Manifesting Extreme Indifference":
Section 210.2(1)(b) also provides that criminal homicide constitutes murder when it is `committed recklessly under circumstances manifesting extreme indifference to the value of human life.' This provision reflects the judgment that there is a kind of reckless homicide that cannot fairly be distinguished in grading terms from homicides committed purposely or knowingly.
Recklessness, as defined in Section 2.02(2)(c), presupposes an awareness of the creation of substantial homicidal risk, a risk too great to be deemed justifiable by any valid purpose that the actor's conduct serves. Since risk, *277 however, is a matter of degree and the motives for risk creation may be infinite in variation, some formula is needed to identify the case where recklessness may be found and where it should be assimilated to purpose or knowledge for purposes of grading. Under the Model Code, this judgment must be made in terms of whether the actor's conscious disregard of the risk, given the circumstances of the case, so far departs from acceptable behavior that it constitutes a `gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.' Ordinary recklessness in this sense is made sufficient for a conviction of manslaughter under Section 210.3(1)(a). In a prosecution for murder, however, the Code calls for the further judgment whether the actor's conscious disregard of the risk, under the circumstances, manifests extreme indifference to the value of human life. The significance of purpose or knowledge as a standard of culpability is that, cases of provocation or other mitigation apart, purposeful or knowing homicide demonstrates precisely such indifference to the value of human life. Whether recklessness is so extreme that it demonstrates similar indifference is not a question, it is submitted, that can be further clarified. It must be left directly to the trier of fact under instructions which make it clear that recklessness that can fairly be assimilated to purpose or knowledge should be treated as murder and that less extreme recklessness should be punished as manslaughter. (emphasis added)
Model Penal Code and Commentaries § 210.2 comment 4 (1962).
The New Jersey Criminal Law Revision Commission echoed this comment in its report when it said:
3. Recklessness Manifesting Extreme Indifference. Intention or purpose to take life or cause grievous bodily harm is not, however, required to prove malice. A lesser culpability will suffice. This was described by our Supreme Court in State v. Gardner, [51 N.J. 444, 458, 242 A.2d 1 (1968)] as
`... knowledge that the act which causes death will probably cause the death of, or grievous bodily harm to, some person whether such person is the person actually killed or not, although such knowledge is accompanied by indifference whether death or grievous bodily harm is caused or not, or by a wish that it may not be caused.'
The Code carries this basic judgment reflecting the view that there is a kind of reckless homicide that cannot fairly be distinguished for this purpose from homicides committed knowingly. Recklessness presupposes an awareness of the creation of substantial homicidal risk, a risk too great to be deemed justifiable by any valid purpose that the actor's conduct serves. Since risk, however, is a matter of degree and the motives for risk creation may be infinite in variation, some formula is needed to identify the case where recklessness should be assimilated to knowledge. The conception employed is that of extreme indifference to the value of human life. The significance of purpose or knowledge is that, cases of provocation apart, it demonstrates precisely such indifference. Whether recklessness is so extreme that it demonstrates similar indifference is not a question that, in our view, can be further clarified; it must *278 be left directly to the trier of the facts. If recklessness exists but is not so extreme, the homicide is manslaughter.
New Jersey Penal Code, Vol. II: Commentary § 2C:11-3 comment 3 (1971).
By the Laws of 1979, c. 178, § 21A, N.J.S.A. 2C:11-4 was supplemented to read as follows:
2C:11-4. Manslaughter.
a. Criminal homicide constitutes aggravated manslaughter when the actor other than purposely or knowingly causes death under circumstances manifesting extreme indifference to human life;
* * * * * * * *
c. Aggravated manslaughter is a crime of the first degree. Manslaughter is a crime of the second degree.
By the Laws of 1981, c. 290, § 13, N.J.S.A. 2C:11-4a was amended to its present language:
a. Criminal homicide constitutes aggravated manslaughter when the actor recklessly causes death under circumstances manifesting extreme indifference to human life.
The committee statement annexed to the bill (referring to it as § 15) says:
As presently defined, homicide constitutes aggravated manslaughter when an actor other than purposely or knowingly causes death under circumstances manifesting extreme indifference to human life. Besides `purposely or knowingly,' the code defines two other mental states: `recklessly' and `negligently.' Therefore, the present definition of aggravated manslaughter seems to cover deaths under circumstances manifesting extreme indifference to human life if the person acted either `recklessly' or `negligently.' However, since the original intent was to cover only those persons acting `recklessly,' the amendment in section 15 deletes the phrase `other than purposely or knowingly' and substitutes `recklessly.'
From this evolution it is apparent that an offense committed "recklessly with extreme indifference to the value of human life" was labeled as murder in the Model Penal Code, but not in the New Jersey Code of Criminal Justice, as initially enacted. Instead, a new category of homicide called "aggravated manslaughter" was created. Originally, this new offense was committed "when the actor other than purposely or knowingly causes death under circumstances manifesting extreme indifference *279 to human life."[5] Finally, this section was amended to replace "other than purposely or knowingly" with "recklessly" to eliminate any concept of negligence in aggravated manslaughter.
As previously noted, the phrase "under circumstances manifesting extreme indifference to [the value of] human life" is not defined in the Code. However, it appears the drafters of the Code intended, in the case of a person who commits a homicide recklessly under circumstances manifesting extreme indifference to human life, to equate such conduct with knowing or purposeful conduct, so as to place the resulting homicide on a par with one committed knowingly or purposely, although providing for a somewhat lesser penalty. It is not clear what our Legislature intended by the use of this phrase, since a similar phrase is used for second degree aggravated assault, N.J.S.A. 2C:12-1b(1), seemingly placing such reckless conduct on the same plane as purposeful or knowing conduct. Yet it is also used in the fourth degree crime of pointing a firearm at another. N.J.S.A. 2C:12-1b(4). See supra note 5.

B
The purpose of the foregoing exegesis on the evolution of the present language of the aggravated manslaughter statute is to demonstrate the significance of the phrase "under circumstances manifesting extreme indifference to human life," to the alleged error in this case. This is the light in which we address points I and II of defendant's legal argument.
*280 Defense counsel objected when the prosecutor sought to elicit testimony from Maurice Davis that defendant had neither visited him nor sent him a card while he was in the hospital or while he was recuperating thereafter from his injuries. The prosecutor argued this testimony was relevant to prove the additional element that defendant's reckless conduct was under circumstances manifesting extreme indifference to human life. As the prosecutor said,
This testimony is elicited to show that Mr. Pindale had extreme indifference to the value of Maurice Davis' life. He could care less.
Alternatively, the prosecutor argued that the evidence was admissible as showing a consciousness of guilt and as evidence of defendant's state of mind under Evid.R. 55.
In ruling upon the defense's objection, the trial judge said:
I'm concerned that there could be other acts of the defendant that has [sic] some probative value which would reflect what his state of mind was. Certainly, counsel, you can come back with, he knows what his condition was, he may not have been in a condition to visit him in the hospital. But I think it's proper. It's probative value evidence that the State has a right to produce.
In response to defense counsel's further contention that the evidence should be excluded under Evid.R. 4 as highly prejudicial, the judge responded, "I don't see how this can inflame the jury," and then said:
There's a peculiarity here that the parties knew each other, they went to school together. If the defendant had not known ... [Davis], I think that your argument would have validity. But added to the fact that you're talking about the consciousness of guilt, you're talking about the state of mind of the defendant, because of the relationship of the parties, they knew each other, went to school, makes it credible evidence.
When defense counsel argued that how well acquainted the parties were did not make any difference "because the extreme indifference to the value of human life that the prosecutor is charged with proving here has absolutely nothing whatsoever to do with my client's contact [sic] in visiting somebody in the hospital or sending a card," the judge responded:
I do not accept that as being a ground. My reason is other acts of the defendant, coupled with the conduct that very well reflects, demonstrates the consciousness of guilt, which of course you can argue.
*281 Thereafter, the prosecutor was permitted to fully develop this factual thesis demonstrating that defendant was more interested in the loss of his automobile than in the deaths of three people and the physical injuries to his wife and his friend. Defendant sought to counter this testimony by the testimony of his former lawyer that he advises all of his clients not to speak to potential witnesses.[6]
To the extent we understand the trial judge's ruling, he did not appear to accept the prosecutor's argument that this evidence was properly relevant as circumstances manifesting the added element of aggravated manslaughter of extreme indifference to human life. Rather, he admitted it as relevant to defendant's consciousness of guilt. In its brief, the State argues that, "despite the trial court's equivocation or even rejection of the theory below, the challenged evidence was relevant to demonstrate `extreme indifference to the value of human life.'" We disagree.
The constituents of a criminal offense at common law are an evil intention and an unlawful act. Actus non facit reum, nisi mens sit rea. State v. Labato, 7 N.J. 137, 149, 80 A.2d 617 (1951). "The criminal intent essential to the commission of a public offense must exist when the act complained of is done." United States v. Fox, 95 U.S. 670, 671, 24 L.Ed. 538, 539 (1878); see also C. Torcia, Wharton's Criminal Law § 27 at 134-135 (14th ed. 1978). N.J.S.A. 2C:2-2 containing the general requirements of culpability is characterized in the commentary of The Final Report of the New Jersey Criminal Law Revision Commission as "one of the keystones of the Code." The commentary continues,
It articulates the general mens rea requirements for the establishment of liability, i.e., the general framework for defining the terms which establish the mental element necessary for each of the Code's specific offenses.
*282 The Code establishes four different kinds of culpability, i.e., purposely, knowingly, recklessly, and negligently, each defined in N.J.S.A. 2C:2-2b. Here we deal with culpability based upon recklessness, to which has been added the elusive phrase "under circumstances manifesting extreme indifference to human life" to constitute aggravated manslaughter. In terms of distinguishing between reckless manslaughter and aggravated manslaughter, another part of this court has concluded that the relevant "circumstances" are objective and do not depend on defendant's state of mind. The degree of recklessness must be determined from all the surrounding circumstances. State v. Curtis, 195 N.J. Super. 354, 364-365, 479 A.2d 425 (App.Div.), certif. denied, 99 N.J. 212, 491 A.2d 708 (1984), concluding that
[t]he ultimate question for the factfinder is whether the homicide was committed under circumstances involving a mere possibility of death or did the circumstances involve a probability of death. If the former, the verdict must be reckless manslaughter, but if the latter the verdict must be aggravated manslaughter.
From this analysis, we conclude that the culpability required must exist before or at the time of the homicide. Therefore, in order for the jury to find defendant guilty of aggravated manslaughter, they must find that the deaths were caused by defendant's recklessness in the operation of his vehicle under circumstances manifesting extreme indifference to human life. In examining those circumstances, the jury could consider the high rate of speed, failure to observe stop signs and red lights, turning out his headlights, and the consumption of beer. See State v. Bogus, supra, 223 N.J. Super. at 419-420, 538 A.2d 1278; see also State v. Radziwil, 235 N.J. Super. 557, 570, 563 A.2d 856. Evidence of these circumstances occurred at a time immediately preceding the homicides. However, evidence of defendant's lack of remorse for the deaths, and callousness and lack of sympathy for his wife's and friend's injuries, were not relevant circumstances of his culpable conduct of recklessness under circumstances manifesting extreme indifference to human life. Although that evidence may logically lead a juror to conclude that defendant *283 manifested an extreme indifference to human life, it did not occur at the time he drove the motor vehicle recklessly. Such evidence was thus irrelevant and highly prejudicial. Thus, we agree with the trial judge's decision that this evidence was not admissible as relevant to circumstance manifesting extreme indifference to human life as the type of recklessness necessary for aggravated manslaughter.
The judge appears to have admitted the evidence as relevant to a consciousness of guilt. The conduct of a defendant subsequent to the commission of a crime is relevant when the conduct in question indicates a consciousness of guilt. Unusual exhibitions of remorse for the victims of a crime may in some circumstances be probative of a party's guilty conscience. State v. Mills, 51 N.J. 277, 286, 240 A.2d 1 (1968), cert. denied, 393 U.S. 832, 89 S.Ct. 105, 21 L.Ed.2d 104 (1968). Here, the State contends that defendant's conduct subsequent to the collision in exhibiting no remorse for the deaths or concern about the injured persons reflects a consciousness of guilt. Although unusual exhibitions of remorse may be probative of a consciousness of guilt, it would seem that the absence of any remorse would not be probative of a consciousness of guilt. It may be more probative of a clear conscience, albeit callous, uncaring and unsympathetic, but not of a person whose conscience is bothering him about the deaths. The rule applies only to such conduct as is intrinsically indicative of a consciousness of guilt, such as unexplained flight, or an unusual exhibition of remorse for the victim of the crime, or the switching of clothes with a cell mate before a lineup. See State v. Phillips, 166 N.J. Super. 153, 160, 399 A.2d 315 (App.Div. 1979), certif. denied, 85 N.J. 93, 425 A.2d 259 (1980). The conduct here could be interpreted as self-inculpatory only by permitting the jury to speculate, unaided by any evidential base, as to defendant's motive in so conducting himself. Id., 166 N.J. Super. at 160, 399 A.2d 315; but see, State v. Crivelli, 89 N.J.L. 259, 261, 98 A. 250 (E. & A. 1916) (admitting evidence of defendant's lack of appearance of grief at the death of his wife), and State v. *284 Cerce, 22 N.J. 236, 245-246, 125 A.2d 689 (1956) (where evidence was admitted as to defendant's indifference when informed that his wife had been killed).
Even if the evidence had been properly admitted as demonstrating a consciousness of guilt, the trial judge did not instruct the jury that this evidence should be used as demonstrative of a consciousness of guilt, not as a circumstance manifesting extreme indifference to human life. Even though the judge did not admit the evidence as a circumstance manifesting extreme indifference to human life, in explaining that element to the jury in his charge, the judge said:
The phrase, under circumstances manifesting extreme indifference to human life, does not focus on defendant's state of mind, but rather on the circumstances under which you find he acted. The State must prove that the defendant acted in a way that showed that he was indifferent to whether or not the three victims lived or died; that is, the defendant acted in a way which showed that he did not care that someone was killed. With respect to aggravated manslaughter, the defendant must have acted in a way under circumstances involving a probability of death (emphasis added).
The combination of this language and the substantial evidence of defendant's failure to show any remorse about the deaths or concern about the injuries to his wife and friend, coupled with the prosecutor's extensive comments on this conduct, suggested to the jury they could conclude that defendant had acted under circumstances manifesting extreme indifference to human life, thus satisfying the State's burden to prove that element. The jury was not instructed that the relevant circumstances manifesting extreme indifference to human life had to exist at the time defendant drove the vehicle recklessly and caused the deaths, not thereafter. The jury is not required to determine how to apply evidence on its own. See State v. Wynn, 21 N.J. 264, 271, 121 A.2d 534 (1956). Furthermore, the substantive value of this evidence is also clearly outweighed by the risk of undue prejudice and should have been excluded on this basis. Evid.R. 4.
We therefore conclude that the admission of this evidence without any limiting instruction, coupled with the suggestion in *285 the judge's charge that it was evidence of circumstances manifesting extreme indifference to human life, was error sufficient to warrant reversal of the convictions of aggravated manslaughter.

C
Our conclusion that reversal of the aggravated manslaughter convictions is warranted is fortified by the obvious excesses of the prosecutor in his summation. Prosecutorial misconduct is not ground for reversal of a criminal conviction unless the conduct is so egregious that it deprived defendant of a fair trial. State v. Ramseur, 106 N.J. 123, 322, 524 A.2d 188 (1987). Generally, a prosecutor is limited in his summation to commenting upon the evidence and the reasonable inferences to be drawn therefrom. State v. Bogen, 13 N.J. 137, 139-140, 98 A.2d 295 (1953), cert. denied sub nom. Lieberman v. State, 346 U.S. 825, 74 S.Ct. 44, 98 L.Ed. 350 (1953). However, this rule does not preclude a vigorous and forceful presentation of the State's case which may be couched in trenchant terms. See State v. Bucanis, 26 N.J. 45, 56, 138 A.2d 739 (1958), cert. denied, 357 U.S. 910, 78 S.Ct. 1157, 2 L.Ed.2d 1160 (1958).
Trial counsel did not object to the portions of the prosecutor's summation about which defendant now complains. Ordinarily, a defendant will not be heard to claim prejudice if defense counsel does not interpose a timely and proper objection to the improper remarks. State v. Bogen, supra, 13 N.J. at 141-142, 98 A.2d 295. A timely objection provides the trial court with an opportunity to rectify the situation or to reduce the impact of such comment by taking corrective action. State v. Bucanis, supra, 26 N.J. at 57, 138 A.2d 739.
The prosecutor's many references to defendant's failure to visit his injured wife and friend, or to express remorse or even sympathy for the three deaths resulting from the collision, but only expressing regret at the damage to his car, and his efforts to date his dead friend's girlfriend, were based upon evidence *286 received at the trial, although we have now concluded such evidence was improperly admitted. Thus, defense counsel's failure to object is understandable.
However, further comments of the prosecutor such as,
His mommy hired him a lawyer. Does this man think that he is going to be able to buy his way out of it?... They could spend a billion dollars and it's not going to bring back [the deceased,]
were improper, as was the comment "the defense's role in this case is to try to confuse you."
It is improper to demean the role of the defense attorney. See State v. Sherman, 230 N.J. Super. 10, 16, 552 A.2d 621 (App.Div. 1988). The prosecutor may not impugn the integrity of a particular lawyer or that of lawyers in general, without basis in fact, as a means of imputing guilt to the defendant. United States v. McDonald, 620 F.2d 559, 564 (5th Cir.1980).
The prosecutor's comment that our system gives defendant all kinds of rights which were scrupulously honored, but that defendant did not give any rights to his victims, suggests some impropriety in affording a defendant these rights. The prosecutor further suggested that defendant is
hoping that he's found twelve stupid people in the county to decide this case. He is hoping that by some stroke of luck somehow you guys might drop the ball and get so confused that you misread the evidence, find him not guilty, so that he can just walk out of here like nothing happened.
Many courts historically have viewed such warnings to the jury about "not doing your job" as among the most egregious forms of prosecutorial misconduct. United States v. Young, 470 U.S. 1, 30, 105 S.Ct. 1038, 1053, 84 L.Ed.2d 1, 22 (1985) (Brennan, J., concurring in part and dissenting in part); see also generally, State v. Sims, 140 N.J. Super. 164, 175-177, 355 A.2d 695 (App.Div. 1976). The summation by the prosecutor went far beyond the limits of propriety.
Although, in the absence of objection by defense counsel, the excesses of the prosecutor might be considered harmless *287 error and insufficient to qualify as plain error amounting to a miscarriage of justice under the law, when coupled with the admission of the evidence of defendant's conduct after the collision, which we find was improperly admitted especially without any limiting instruction, the aggregate of those errors clearly warrant reversal of defendant's convictions of aggravated manslaughter. See State v. Orecchio, 16 N.J. 125, 129, 106 A.2d 541 (1954).

D
We find no merit to defendant's legal argument in Point III concerning the rebuttal testimony. R. 2:11-3(e)(2).

IV
Since reversal of defendant's convictions for aggravated manslaughter will include vacation of the sentences imposed, it is unnecessary to deal at length with defendant's claim that the sentence is manifestly excessive. However, we offer some comments since defendant may ultimately be sentenced again.
Defendant argues that all three deaths resulted from one criminal transaction, the reckless operation of the vehicle. He contends that the proof necessary to convict him of one of the homicides would not vary from the proof needed to convict on either of the other two. Citing State v. Mills, supra, 51 N.J. at 289, 240 A.2d 1, defendant claims the imposition of three consecutive sentences was improper. However, in State v. Craig, 237 N.J. Super. 407, 568 A.2d 100 (App.Div. 1989), we concluded that Mills is no longer controlling. Id. at 413, 568 A.2d 100. In Craig, we noted that the Code has dealt with the question of merger in a manner that clearly impacts the conclusion in the Mills decision. See also State v. Lewis, 223 N.J. Super. 145, 152, 538 A.2d 399 (App.Div.), certif. denied, 111 N.J. 584, 546 A.2d 510 (1988), where we concluded that six aggravated assaults arising out of an arson did not merge with aggravated *288 manslaughter or each other because different victims were involved.
However, the decision whether to require that the sentences imposed be served concurrently or consecutively requires the analysis spelled out by the Supreme Court in State v. Yarbough, 100 N.J. 627, 643-644, 498 A.2d 1239 (1985). The determination of this question may depend on whether the convictions are for death by auto or for aggravated manslaughter. In cases that are extreme and extraordinary, deviation from the guidelines may be called for. Id. at 647, 498 A.2d 1239; see also, State v. Louis, 117 N.J. 250, 566 A.2d 511 (1989), and State v. Craig, supra, 237 N.J. Super. at 417, 568 A.2d 100.
In delineating the aggravating circumstances, the judge outlined the many factors of the offense which he considered. In doing so, he appears to have considered as aggravating circumstances some of the factors that elevate death by auto to aggravated manslaughter. This would be double counting. See State v. Link, 197 N.J. Super. 615, 620, 485 A.2d 1069 (App.Div. 1984), certif. denied, 101 N.J. 234, 501 A.2d 911 (1985). On the other hand, had defendant been convicted of the death-by-auto counts, which we conclude were proven beyond a reasonable doubt unaffected by the errors requiring reversal of the aggravated manslaughter convictions, then consideration of those factors as aggravating circumstances would be appropriate.
The judge found no mitigating circumstances, notwithstanding that these convictions constituted defendant's first adult offenses. While the criteria established in the statute concerning a defendant's prior record, N.J.S.A. 2C:44-1a(6), refers to a prior criminal record, the judge appropriately considered his prior juvenile record. See State v. Marzolf, 79 N.J. 167, 177, 398 A.2d 849 (1979). In addition, we see no reason why, since this case involved the operation of a motor vehicle, the judge could not consider defendant's prior driving record. *289 Furthermore, the judge apparently did not consider any of the delineated statutory mitigating circumstances to have existed. See N.J.S.A. 2C:44-1b. Although not one of the delineated statutory mitigating circumstances, the judge gave no consideration to defendant's youth. Some of the Code's mitigating circumstances may be applicable in this case.
We observe that, although the judge found the aggravating factors substantially outweighed the mitigating factors since he found none, the judge imposed the presumptive sentence of 20 years for aggravated manslaughter, N.J.S.A. 2C:44-1f(1)(a), for each victim, to which he affixed a term of parole ineligibility. The Supreme Court suggests this is most unusual. State v. Kruse, 105 N.J. 354, 362, 521 A.2d 836 (1987). Then he ordered the sentences to be served consecutively. See State v. Yarbough, supra.
Defendant complains that, in imposing $2,500 as a penalty to the Violent Crimes Compensation Board for each aggravated manslaughter conviction, the judge did not consider his lack of a criminal record, his ability to pay, nor the economic impact on his dependents. Under N.J.S.A. 2C:43-3.1, any person convicted of a crime of violence resulting in the injury or death of another person shall be assessed a penalty of at least $30, but not to exceed $10,000 for each such crime for which he was convicted. While the penalties imposed in this case are within the statutory authority, the judge should have expressed his reasons for imposing them. See State v. Diaz, 188 N.J. Super. 504, 508, 457 A.2d 1223 (App.Div. 1983).

V
The convictions of fourth degree assault by auto are affirmed, but the sentences imposed therefor are vacated, and defendant shall be resentenced for those offenses on disposition of the other counts of the indictment pursuant to this opinion. The aggravated manslaughter convictions are reversed and remanded. However, we are satisfied that the lesser included *290 offenses of death by auto as charged in the fourth, fifth and sixth counts of the indictment were proven beyond a reasonable doubt, and that the errors which prompt our reversal of the aggravated manslaughter convictions charged in the first, second and third counts do not taint the death by auto offenses. Therefore, the matter is remanded either for the entry of a judgment of conviction on counts four, five and six of the indictment charging death by auto, and two counts of assault by auto charged in the seventh and eighth counts of the indictment upon which defendant will be resentenced, or, at the option of the prosecutor, for retrial on counts one through six of the indictment. The convictions on counts seven and eight are affirmed, but sentencing on these counts shall await the result of the retrial. We do not retain jurisdiction.
NOTES
[1] Defendant had also been indicted for three counts of third-degree death by auto (N.J.S.A. 2C:11-5), which were dismissed as lesser included offenses of the aggravated manslaughter.
[2] At the time of the homicides in this case, the driver of an automobile driven recklessly causing death could be charged with either third degree death by auto under N.J.S.A. 2C:11-5 or, if the circumstances manifested extreme indifference to human life, aggravated manslaughter under N.J.S.A. 2C:11-4a. State v. Bogus, 223 N.J. Super. 409, 418, 538 A.2d 1278 (App.Div.), certif. denied, 111 N.J. 567, 546 A.2d 497 (1988). However, a homicide caused by reckless driving could not be prosecuted as manslaughter under N.J.S.A. 2C:11-4b(1). State v. Milligan, 202 N.J. Super. 336, 346, 495 A.2d 132 (App.Div. 1985), aff'd, 104 N.J. 67, 514 A.2d 1316 (1986). In response to the Milligan decision, the Legislature amended the death by auto statute, N.J.S.A. 2C:11-5, by the Laws of 1988, c. 75, § 1, effective August 1, 1988, approximately five months after the offense in this case, to authorize an indictment and conviction for manslaughter and making death by auto a lesser included offense. We observe that in this case, without objection, the trial judge charged reckless manslaughter as a lesser included offense to aggravated manslaughter, notwithstanding the Milligan case.
[3] Defendant was acquitted by the trial judge of driving while intoxicated.
[4] Death by auto was originally enacted as a fourth degree offense under N.J.S.A. 2C:11-5.
[5] We do not know whether the omission of the words "the value of" before the words "human life" has any significance. We observe that the phrase used in addressing aggravated assault in N.J.S.A. 2C:12-1b(1), "[a]ttempts to cause serious bodily injury to another or causing such injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury," constitutes a second degree crime. However, pointing a firearm at or in the direction of another, "[k]nowingly under circumstances manifesting extreme indifference to the value of human life," whether or not the actor believes it to be loaded, is a fourth degree crime.
[6] Although in his summation the prosecutor stated that defendant had "fired" this lawyer, we find no evidence to support this statement.