268 N.J. Super. 553 (1993)
634 A.2d 127
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JEFFREY SETZER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 3, 1993.
Decided December 6, 1993.
*557 Before Judges PRESSLER, DREIER and KLEINER.
Zulima V. Farber, Public Defendant, attorney for defendant-appellant (Steven M. Gilson, Designated Counsel, of counsel and on the brief).
Fred DeVesa, Acting Attorney General, attorney for plaintiff-respondent (Chana Barron, Deputy Attorney General, of counsel and on the letter-brief).
The opinion of the Court was delivered by KLEINER, J.S.C. (temporarily assigned).
Defendant Jeffrey Setzer appeals his conviction after a jury trial of aggravated arson contrary to N.J.S.A. 2C:17-1a(1). He was sentenced to a ten year term of imprisonment and was ordered to pay $30 to the Violent Crimes Compensation Board.[1]
Setzer was originally indicted, together with Traci Ann Horn, with aggravated arson, N.J.S.A. 2C:17-1a(1) (count one); attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-2 (count two); and conspiracy to commit aggravated arson and attempted murder, N.J.S.A. 2C:5-2 (count three). Count three was dismissed during the trial and defendant was acquitted by the jury verdict on count two.
On appeal, defendant raises the following issues:

*558 POINT I BECAUSE THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT DEFENDANT ADEQUATELY RECEIVED HIS MIRANDA RIGHTS AND WAIVED THEM, IN COMPLIANCE WITH THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION, THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY NOT SUPPRESSING DEFENDANTS ALLEGED CONFESSION.
POINT II THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURORS THAT THEY WERE TO DECIDE WHETHER DEFENDANT'S CONFESSION WAS CREDIBLE AND TO DISREGARD IT IF THEY FOUND IT NOT TO BE CREDIBLE CONSTITUTES REVERSIBLE ERROR. (NOT RAISED BELOW)
POINT III THE PROSECUTOR'S IMPROPER AND PREJUDICIAL COMMENTS DURING SUMMATION DENIED DEFENDANT A FAIR TRIAL AND THEREFORE CONSTITUTE REVERSIBLE ERROR.
POINT IV THE SENTENCING COURT ERRED IN NOT RECOGNIZING DEFENDANT'S INTOXICATION AS A MITIGATING FACTOR; THEREFORE, DEFENDANT'S 10-YEAR TERM OF IMPRISONMENT MUST BE VACATED AND THIS MATTER MUST BE REMANDED FOR RESENTENCING.
Prior to May 1, 1990, Setzer commenced a relationship with Traci Ann Horn. Horn had custody of a child, Melissa, born during Horn's marriage to David Stewart. On April 9, 1990, Stewart was awarded temporary custody of Melissa due to his allegations that Horn was an unfit parent. Because Stewart feared that Horn might retaliate and possibly abduct Melissa, he permitted Melissa to reside at the home of his sister.
On the afternoon of May 1, 1990, Setzer and Horn attended a birthday party and commenced drinking alcoholic beverages at the party and thereafter, at Horn's residence. Witnesses observed Setzer consume six cans of beer at the party and Horn later admitted that she and Setzer consumed fourteen cans of beer at her residence. Horn expressed a desire to prevent her former husband from obtaining permanent custody at the custody trial scheduled for May 4, 1990. Defendant initially suggested tampering with the brakes and putting sugar in the gas tank of Stewart's automobile in an effort to scare Stewart. Defendant then decided to set the front door of Stewart's apartment on fire. Horn, aware that her daughter Melissa was not at Stewart's apartment, agreed.
*559 Defendant and Horn drove to a gas station, purchased gasoline in a container and drove to Stewart's apartment. Defendant poured the gasoline in the apartment mail slot and ignited it. The apartment was occupied that night by Stewart, his current wife and their daughter, and by Stewart's mother and father-in-law. The fire erupted at approximately 11:00 p.m., when everyone except Stewart's mother-in-law, Josephine Silver, was asleep. Silver was able to arouse the other occupants, the police and fire department were summoned, and the fire was extinguished.
Sergeant Gary DeFoe of the Randolph Township Police Department questioned Silver and Stewart. Silver indicated that immediately before the fire she heard a "large car" with a "loud muffler" approach the apartment complex. Stewart indicated that Horn drove a blue Dodge. DeFoe proceeded with another police officer to Horn's apartment.
When DeFoe arrived at Horn's residence, there was a blue Dodge parked in the driveway. DeFoe felt the hood of the car and determined that the metal above the radiator was warmer to the touch than the surrounding metal on the car and concluded that the car had been driven recently. DeFoe also looked in a garbage can that was placed out by the road ready for garbage pick-up and found a rag that had a strong smell of gasoline on it.[2]
DeFoe and the other officer knocked at Horn's door and proceeded to question Horn and defendant separately. Both Horn and defendant were still dressed in daytime clothes, and both stated that no one had driven the vehicle past 7:00 p.m. that evening. Although DeFoe detected an odor of alcohol coming from defendant's breath, DeFoe maintained that he did not appear to be drunk. DeFoe then left after explaining to Horn and defendant that the detective bureau may have to question them again at a later time.
*560 The following day, George Wendt, an investigator employed by the Morris County Prosecutor's Office assigned to the arson unit of the white collar crime squad and an expert in the area of arson, arrived with Detective Wertman of the Randolph Township Police Department at the fire scene to investigate. Upon interviewing the victims of the fire and conducting a scene analysis, Wendt and Wertman obtained warrants to search Horn's apartment and vehicle. Through the use of a police dog trained in the detection of accelerants such as gasoline, the search resulted in the seizure of the rubber floor mat from Horn's car as well as shoes and a pair of bluejeans which belonged to Horn. Additionally, upon starting Horn's car, the police found that the engine sounded very loud and needed a new exhaust system. Wendt and Wertman then asked Horn to accompany them back to the Randolph Township Police Headquarters for questioning. At Horn's request, defendant accompanied them to the police department.
During Horn's interrogation, she admitted her involvement in setting the fire and implicated the defendant. Based on that information, defendant was advised orally of his Miranda rights,[3] signed a Miranda form and was questioned by Wendt and Wertman. Defendant's statement was neither taped nor written.
Before trial, defendant moved to suppress his oral statement. Both Wendt and Wertman testified at the Miranda hearing. Evid.R. 8(3) [now N.J.R.E. 104(c)]. Although the Miranda card bearing the defendant's signature was marked for identification, it was not offered into evidence. Wendt testified that initially defendant indicated that he and Horn never left Horn's apartment after 7:00 p.m., however, when confronted with Horn's admissions, defendant admitted his involvement in setting the fire.
At trial, defendant, testifying on his own behalf, maintained that he was an alcoholic and suffered from alcoholic blackouts where he would have memory losses after drinking, usually after consuming about four six-packs of beer. After defendant recounted an *561 extensive history of alcohol abuse, defendant testified that he remembered drinking with Horn at her apartment, but did not remember setting Stewart's door on fire or confessing to the police. The defense offered witnesses familiar with defendant's drinking habits who testified that his drinking had recently become excessive. Horn also testified that defendant drank on a daily basis, although the amounts would vary.
The defense also called as a witness William Kane, an expert in the field of alcoholism, who explained that a blackout is a memory loss phenomenon of intoxication where alcohol intercepts the brain's ability to store and later retrieve events or circumstances that happen during intoxication. Kane explained that if a person is drunk and experiencing a memory loss or blackout, the blackout is not apparent until later since the person could be behaving and performing skills rather normally. Later, after going to sleep and waking up, the person cannot remember what has happened.
The crux of defendant's initial point of error arises from his contention that his oral statement should have been suppressed. Defendant's argument is premised on the fact that although the only testifying officer indicated that Miranda rights were given to defendant, the officer never verbalized in court precisely which Miranda rights were actually administered to the defendant. Additionally, defendant argues that although the Miranda waiver card bearing his signature was marked for identification, the card was not offered into evidence.
The State must prove that a defendant has waived his Miranda rights by proof beyond a reasonable doubt before a confession is admissible in evidence. State v. Adams, 127 N.J. 438, 447, 605 A.2d 1097 (1992); State v. Johnson, 116 N.J. 99, 101, 561 A.2d 243 (1989); State v. Yough, 49 N.J. 587, 600-01, 231 A.2d 598 (1967). Although we "indulge every reasonable presumption against waiver of [these] fundamental constitutional rights," State v. McCloskey, 90 N.J. 18, 25, 446 A.2d 1201 (1982) (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938)), there is no authority for the proposition that *562 the judge must hear testimony enumerating the actual Miranda rights verbalized prior to the interrogation. There is also no authority to support the contention that the judge must receive in evidence the Miranda waiver card bearing the defendant's signature.
Officer Wendt testified that Miranda rights were given defendant and that defendant had signed a Miranda waiver. That testimony, if otherwise credible, is sufficient to establish a prima facie basis for concluding that the Miranda rights were in fact given and were voluntarily waived. Naturally the defendant was free to challenge that testimony through cross-examination and by offering contradictory testimony. The defendant in this instance did neither. The court was free to conclude that Miranda warnings were given and were voluntarily waived, thus rendering defendant's oral statement admissible at trial. State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964); State v. Godfrey, 131 N.J. Super. 168, 174, 329 A.2d 75 (App.Div. 1974), aff'd o.b. 67 N.J. 267, 337 A.2d 371 (1975); State v. Micheliche, 220 N.J. Super. 532, 537, 533 A.2d 41 (App.Div. 1987); State v. Sherwood, 139 N.J. Super. 201, 203, 353 A.2d 137 (App.Div.), certif. denied, 70 N.J. 517, 361 A.2d 532 (1976).
Defendant next asserts that the trial court's failure to instruct the jurors that they were to decide whether defendant's confession was credible and to disregard it if they found it not to be credible constitutes reversible error. This issue was not raised below and must be "clearly capable of producing an unjust result" to require reversal. R. 2:10-2.
In State v. Hampton, 61 N.J. 250, 272, 294 A.2d 23 (1972), the Court stated:
[W]e hold for the future that the trial court alone shall determine (1) whether the Miranda warnings were given to the accused and his rights thereunder waived by him before the confession was given; and that if it finds the warnings were not given, or if given the rights not waived, the confession must be excluded, and (2) if those conditions were satisfied, whether in light of all the circumstances attending the confession it was given voluntarily. If these questions are resolved in favor of the State, then, without being advised of the court's decision, the jury shall be *563 instructed that they should decide whether in view of all the same circumstances the defendant's confession is true. If they find that it is not true, then they must treat it as inadmissible and disregard it for purposes of discharging their function as fact finders on the ultimate issue of guilt or innocence.

[Emphasis added.]
A similar instruction is also required by Evid.R. 8(3), [now N.J.R.E. 104(c)]. The purpose behind such a charge is to "`insure to a defendant an unfettered factual consideration by the jury of the credibility' of all or part of [defendant's] confession." State v. Boyle, 198 N.J. Super. 64, 74, 486 A.2d 852 (App.Div. 1984) (quoting State v. Bowman, 165 N.J. Super. 531, 537, 398 A.2d 908 (App.Div. 1979)).
Although the trial court failed to give such a charge to the jury, the State submits that the charge as a whole properly set forth the correct principles to be applied in assessing the credibility of evidence and that those instructions implicitly included defendant's statement. The trial judge charged the jury:
You are the sole judges of the facts, the sole judges of the weight of the testimony, the credibility of the witnesses, the inferences to be drawn from all the testimony and the ultimate conclusions to be reached upon all of the facts.
........
The credit and the belief of the witnesses is to be determined and must be determined by you and by you alone.
The judge then stated:
You, as jurors, are the sole judges of the credibility of each of the witnesses and the weight of the testimony. You should carefully scrutinize all of the testimony given, circumstances under which each witness has testified and every matter in evidence which tends to show whether a witness is worthy of belief.
Consider the intelligence of the witness, the motive and the state of mind and demeanor on the witness stand. Consider the ability of the witness to observe the matters as to which he or she is testifying and whether he or she impresses you as having an accurate recollection of the matters.
Consider also any relationship that each witness may bear to either side of the case, any interest in the outcome which might be affected by the verdict, any interest in the outcome and the extent to which each witness is either supported or contradicted by the other evidence in the case.

*564 You must apply your scrutiny to every witness regardless of any witness' station in life or title. All persons are indeed equal when they testify and you must apply the same scrutiny to all persons who testify before you.
The court later added, "After making your own judgment you will give the testimony of each witness such credibility, if any, as you think it deserves."
The judge instructed:
If you believe that any witness wilfully or knowingly testified falsely as to any material fact in this case with the intent to deceive you, you may give such weight to his or her testimony as you deem it entitled. You may believe some of it or you may, in your discretion, disregard all of it.
In considering whether the trial court's general instructions on credibility worked to ameliorate any harm from the exclusion of the Hampton charge, we note that the New Jersey Model Jury Charge regarding statements of defendants provides:
There is for your consideration in this case a certain oral statement alleged to have been made by the defendant.
It is your function to determine whether or not such statement was actually made by the defendant and, if made, whether such statement or any portion thereof is credible.
........
In considering whether or not the statement allegedly made by the defendant is credible, you should take into consideration the circumstances and facts surrounding the giving of the statement, as well as all other evidence in the case.
........
If, after consideration of all of these factors you determine that the statement was not actually made (given) or that the defendant's alleged statement is not credible then you must disregard the statement completely.
If you find that the statement was made (given) and that part or all of the statement is credible, you may give such weight to that portion of the statement you have found to be truthful and credible as you deem it should be accorded in your deliberations.
In reviewing a trial court's charge, we consider whether the charge as a whole was improper. State v. Wilbely, 63 N.J. 420, 422, 307 A.2d 608 (1973). If, on reading the charge as a whole, prejudicial error does not appear, then the verdict must stand. State v. Coruzzi, 189 N.J. Super. 273, 312, 460 A.2d 120 *565 (App.Div.), certif. denied, 94 N.J. 531, 468 A.2d 185 (1983); State v. Thompson, 59 N.J. 396, 411, 283 A.2d 513 (1971).
We find that the charge as a whole here did not constitute plain error. The trial judge clearly and repeatedly instructed the jury that it was to consider the credibility of all of the testimony, which included the testimony as to defendant's statement. The trial court's omission of the Hampton instruction in this instance was therefore not "clearly capable of producing an unjust result." R. 2:10-2. However, strict adherence to Hampton will avoid similar appellate review in future cases.
Defendant next argues that the prosecutor's improper comments made during summation denied the defendant a fair trial. During summation, the prosecutor attempted to discredit the testimony of defendant's expert witness by stating:
He [Kane] came in at the last minute, two-hour interview with some oral data that had been given him and he was schnookered. He was schnookered by that man right there, Jeff Setzer, and it became evident when you took Mr. Setzer's testimony and you took Mr. Kane's testimony and you looked at them.
Defendant argues that these remarks by implication impugned defense counsel's integrity and translates into a conspiracy between defendant and his counsel.
Generally, a prosecutor is limited to commenting upon the evidence and the reasonable inferences which may be drawn from that evidence, although a prosecutor is not precluded from advancing a vigorous and forceful presentation of the State's case. State v. Bucanis, 26 N.J. 45, 138 A.2d 739, cert. denied, 357 U.S. 910, 78 S.Ct. 1157, 2 L.Ed.2d 1160 (1958); State v. Pindale, 249 N.J. Super. 266, 592 A.2d 300 (App.Div. 1991). It is clearly improper for a prosecutor "to demean the role of defense counsel or cast aspersions upon a lawyer's motives. It is likewise improper for a prosecutor, without support in the evidence, to accuse a defendant of conspiring with his counsel to conceal and distort the truth." State v. Darrian, 255 N.J. Super. 435, 457, 605 A.2d 716 (App.Div.), certif. denied, 130 N.J. 13, 611 A.2d 651 (1992) (citations omitted). Such prosecutorial misconduct requires reversal where the conduct *566 "was so egregious that it deprived defendant of a fair trial." State v. Moore, 122 N.J. 420, 462, 585 A.2d 864 (1991); State v. Marshall, 123 N.J. 1, 152-64, 586 A.2d 85 (1991); State v. Pindale, supra, 249 N.J. Super. at 285, 592 A.2d 300.
Additionally, we note that factors which should be considered in reviewing prosecutorial misconduct are: whether defense counsel timely and properly objected to the remarks; whether the remark was withdrawn promptly; and whether the court gave the jury curative instructions. State v. Zola, 112 N.J. 384, 426, 548 A.2d 1022 (1988), cert. denied, 489 U.S. 1022, 109 S.Ct. 1146, 103 L.Ed.2d 205 (1989); State v. Ramseur, 106 N.J. 123, 323, 524 A.2d 188 (1987).
Since defense counsel here did not make a timely objection to the prosecutor's statement, we must determine whether the comment was "clearly capable of producing an unjust result." R. 2:10-2; State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971).
The prosecutor's statement was clearly improper in that one could reasonably imply a conspiracy between defendant and his counsel by the term "schnookered." However, it was an isolated statement, and no other comments in his summation are alleged to have been improper. Additionally, the trial court below instructed the jurors that statements by counsel are not evidence. State v. Darrian, supra, 255 N.J. Super. at 457, 605 A.2d 716; State v. Watson, 224 N.J. Super. 354, 362, 540 A.2d 875 (App.Div.), certif. denied, 111 N.J. 620, 546 A.2d 537, cert. denied, 488 U.S. 983, 109 S.Ct. 535, 102 L.Ed.2d 566 (1988). On these facts, we do not believe that the statement made by the prosecutor was sufficiently prejudicial to warrant reversal. R. 2:10-2; State v. Macon, supra, 57 N.J. at 336, 273 A.2d 1.
Defendant's final argument is that the sentencing court erred in not recognizing defendant's intoxication as a mitigating factor. Because the record supports the conclusion that the sentencing court's findings on the aggravating and mitigating factors are based upon competent, credible evidence, and that the *567 application of the guidelines to the facts of this case does not render the sentence so unreasonable as to "shock the judicial conscience," State v. Roth, 95 N.J. 334, 364-65, 471 A.2d 370 (1984), we must reject defendant's argument.
The sentencing court correctly noted, "Alcohol use is not an excuse, it's not a justification, it is simply a factor that the Court may consider." After making a finding as to the aggravating factors present, the sentencing judge refused to include defendant's intoxication as a mitigating factor under N.J.S.A. 2C:44-1b. Finding no mitigating factors, the court sentenced defendant to an enhanced sentence of ten years.
N.J.S.A. 2C:44-1b provides: "In determining the appropriate sentence to be imposed on a person who has been convicted of an offense, the court may properly consider the following mitigating circumstances: ... (4) There were substantial grounds tending to excuse of justify the defendant's conduct, though failing to establish a defense...." (Emphasis added.)
Initially, we note that the testimony at trial did not definitively establish that defendant was in fact intoxicated during the commission of the offense. There was testimony at trial to the effect that defendant was not drunk at the time he left the birthday party. Additionally, although Horn told the police that defendant was intoxicated, she stated at trial that he was "maybe intoxicated enough to feel good or something, but he was not staggering and he drove perfectly." Also, Sergeant DeFoe, who had much experience as a Ramsey Township police officer in encountering persons under the influence of alcohol, testified that when he questioned defendant the night of May 1, 1990 after the crime had occurred, defendant did not appear to be drunk.
Even if it were established that defendant was in fact intoxicated at the time of the crime, the trial court would not be required to consider such intoxication as a mitigating factor. "Crimes committed under the influence of alcohol or drugs do not detract from the seriousness of the offense." State v. Towey, 244 *568 N.J. Super. 582, 595, 583 A.2d 352 (App.Div.), certif. denied, 122 N.J. 159, 584 A.2d 226 (1990) (citing State v. Roth, 95 N.J. 334, 368, 471 A.2d 370 (1984)). As we previously noted in State v. Jabbour, 118 N.J. 1, 6, 570 A.2d 391 (1990):
[T]he Code focuses on "the gravity of the offense and not the blameworthiness of the offender." In enacting the Code, the Legislature sought to promote uniformity in sentencing by channeling the discretion of trial courts. The Code achieves that uniformity by emphasizing the severity of the crime, rather than defendant's capacity for rehabilitation.

[Citations omitted.]
The Code thus does not condone leniency even where the commission of the offense may be related to the offender's drug or alcohol addiction. State v. Rivera, 124 N.J. 122, 126, 590 A.2d 238 (1991); see also State v. Ghertler, 114 N.J. 383, 390, 555 A.2d 553 (1990).
The sentencing court's refusal to consider defendant's alleged intoxication a mitigating factor was therefore not erroneous. Additionally, the record here does not demonstrate that the sentencing court was "clearly mistaken" or that the application of the sentencing guidelines was so unreasonable so as to "shock the judicial conscience." State v. Jarbath, 114 N.J. 394, 401, 555 A.2d 559 (1989); State v. Roth, 95 N.J. 334, 364-65, 471 A.2d 370 (1984).
The judgment of conviction is affirmed.
NOTES
[1] Prior to sentencing, Setzer entered a plea of guilty to a separate unrelated indictment, No. 90-07-07041, charging receiving stolen property in the fourth degree. He was sentenced to a custodial term of eighteen months concurrent to the sentence imposed in this matter and a Violent Crimes Compensation Board assessment of $30.
[2] Defendant did not challenge DeFoe's seizure of the rag from the garbage can. State v. Hempele, 120 N.J. 182, 576 A.2d 793 (1990).
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).