792 A.2d 487 (2002)
348 N.J. Super. 505
STATE of New Jersey, Plaintiff-Respondent,
v.
Frank PREMONE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted November 14, 2001.
Decided March 6, 2002.
*488 Peter A. Garcia, Acting Public Defender, attorney for appellant (Robert L. Sloan, Assistant Deputy Public Defender, of counsel and on the brief).
John J. Farmer, Jr., Attorney General, attorney for respondent (Jafer Aftab, Deputy *489 Attorney General, of counsel and on the brief).
Before Judges SKILLMAN, CARCHMAN and WELLS.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
Defendant was indicted for capital murder, in violation of N.J.S.A. 2C:11-3a(1) and (2); felony murder, in violation of N.J.S.A. 2C:11-3a(3); burglary, in violation of N.J.S.A. 2C:18-2; robbery, in violation of N.J.S.A. 2C:15-1; aggravated sexual assault, in violation of N.J.S.A. 2C:14-2a; unlawful possession of a weapon, in violation of N.J.S.A. 2C:39-5d; possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:39-4d; retaliation against witnesses, in violation of N.J.S.A. 2C:28-5b; and criminal contempt, in violation of N.J.S.A. 2C:29-9.
Defendant filed a motion to suppress the evidence contained in a shoulder bag that he left behind in a motel room. After an evidentiary hearing, the trial court denied the motion.
Defendant subsequently entered into a plea bargain under which he agreed to plead guilty to non-capital murder, and the State agreed to recommend a sentence of life imprisonment, with thirty years of parole ineligibility, and to dismiss the other charges. The trial court accepted the plea and sentenced defendant in accordance with the plea bargain to life imprisonment, with thirty years of parole ineligibility. The court also imposed a $1,000 VCCB assessment, a $75 SNSF assessment and a $30 LEOTEF assessment.
On appeal, defendant argues that the trial court erred in denying his motion to suppress. Defendant also argues that the $1,000 VCCB penalty imposed upon him as part of the sentence was manifestly excessive.
The victim of the murder was defendant's former girlfriend, Donna Munyon. On December 8, 1996, the police discovered the victim's body, which had been stabbed numerous times, in her apartment in Brigantine. A large quantity of blood was found around the body and in various other locations in the apartment. The Major Crimes Unit in the Atlantic County Prosecutor's Office commenced an investigation of the crime that apparently focused on defendant.
On December 9, 1996, a group of investigators went to the El Rancho Motel in Atlantic City, after receiving information that defendant was staying there. However, the owner of the motel informed the investigators that defendant had checked out the day before. The owner also informed the investigators that defendant had changed his appearance by shaving his mustache and darkening his hair and that he had left a shoulder bag in his room when he checked out.
The owner brought the zippered vinyl bag to the investigators in the motel office. One of the investigators, Sergeant John Burke, asked the owner what the motel normally would do with articles left in a room, and he said they would be kept for some period of time and then discarded. Sergeant Burke unzipped the bag and discovered clothing, toiletries and other personal items inside. The clothing included a pair of jeans covered with blood that was later found to match the blood type of the victim. Sergeant Burke stated that he felt he did not need a search warrant to unzip the bag because it had been abandoned.
When defendant returned to the motel the next day, he was arrested.
At the suppression hearing, the State's primary argument was that the *490 search of the shoulder bag without a warrant was valid because defendant had abandoned the bag by leaving it in the motel room when he checked out. The State also argued that the search was conducted by motel employees and therefore was not subject to Fourth Amendment constraints. In addition, the State argued that defendant's motion to suppress should be denied because the contents of the bag inevitably would have been discovered in the course of the police investigation.
The trial court summarily rejected the State's argument that the search of the bag was valid under the inevitable discovery doctrine:
[I]n order to invoke [the] inevitable discovery... rule, the State has to prove by clear and convincing evidence that proper, normal, and specific investigatory procedures ... would have been pursued... in order to complete the investigation in the case, and that under all the surrounding relevant circumstances the pursuit of those procedures would have inevitably resulted in the discovery of the evidence in ... question, and that the discovery of the evidence through the use of such procedures would have occurred wholly independently of discovery of such evidence by unlawful means.
To me that means what it says, independent investigation. It doesn't mean... simply that they could have obtained the information by applying for and securing a search warrant....Otherwise,... you wouldn't need a search warrant simply because you could say, "I could have gotten a search warrant," ... which seems to be a circular type argument.
However, the court concluded that the search was valid because the production of the bag constituted private action rather than a search by the police:
[T]he Constitution protects individuals against unlawful seizures, searches and seizures by the police. The law does not protect individuals against seizures and searches by private citizens.
For example, ... if a person checks into a motel and has a gun with them, he leaves for breakfast. He locks the door and he leaves the gun in the room, he clearly has an expectation of privacy. He clearly has not abandoned that gun.
But if a maid happens to be cleaning up the room and finds that gun and turns that gun over to the manager, who in turn calls the police and turns it over to the police, there's no unlawful search and seizure ... by the police.
Whatever actions the management of that motel took with respect to taking possession of that bag and turning it over to the police or to the ... investigators in this case, was private action and in my view, the Constitution does not protect individuals against private actions.
So there was clearly no search by the state in this case. They were merely handed an item ... by the manager ... a private citizen, and since it was delivered to them by private citizens, there was no unlawful search and seizure.
Since ... the bag was delivered to them or when the bag was delivered to the investigators, in my view, it was theirs to do with as they saw fit. They didn't need a search warrant to open it and moreover, ... even if, under normal circumstances, a search warrant would have been required here ..., they would have been entitled to open it immediately anyway....
This is not a question of just evidence against a person who happened to be in custody. They were looking for the defendant. As ... Burke said, there might have been something of evidential *491 value in the bag that might have not only been evidence of a crime, but might have enabled them to locate the defendant.
So clearly, they were entitled to open it. But as I say, I don't believe they required any warrant to open the bag. It was delivered to them ... by a private citizen. It was theirs to do with as they saw fit.
The trial court also observed:
I suppose when a person leaves an article in a motel room, whether he leaves it there deliberately or whether ... he forgets it, he can be said to have abandoned it. After all, he could forget it and never remember it.
However, the court declined to rule upon the State's argument that defendant had abandoned the shoulder bag.
We conclude that the trial court erred in concluding that the search of defendant's bag was valid under the private search doctrine. We therefore remand the case for the court to make findings of fact and conclusions of law with respect to the State's abandonment argument.
The Fourth Amendment "is wholly inapplicable `to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.' " United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed. 2d 85, 94 (1984) (quoting Walter v. United States, 447 U.S. 649, 662, 100 S.Ct. 2395, 2404, 65 L.Ed.2d 410, 421 (1980) (Blackmun, J., dissenting)). However, if the results of a private search are turned over to a police investigatory agency, that agency "may not exceed the scope of the private search unless it has the right to make an independent search." Walter, supra, 447 U.S. at 657, 100 S.Ct. at 2402, 65 L.Ed.2d at 418; see also State v. Saez, 268 N.J.Super. 250, 271, 633 A.2d 551 (App.Div.1993) (D'Annunzio, J.A.D., dissenting) ("[W]here the government expands the private search, the third-party intervention exception no longer applies to the fruits of the expanded search"), rev'd on basis of dissent, 139 N.J. 279, 653 A.2d 1130 (1995). Thus, "[a police] officer's authority to possess a package is distinct from his authority to examine its contents." Walter, supra, 447 U.S. at 654, 100 S.Ct. at 2401, 65 L.Ed.2d at 416; see generally 1 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment (3d ed.1996) § 1.8(b).
The application of these principles is illustrated by United States v. Rouse, 148 F.3d 1040 (8th Cir.1998). In that case, a search of defendant's luggage by an airline employee revealed a number of identification cards and blank social security cards. Id. at 1041. Since these items seemed suspicious, the airline employee called a policeman, who searched the luggage and discovered, in addition to the above-mentioned items, a laminating machine and material for laminating cards. Ibid. The Court of Appeals held that this search impermissibly expanded the scope of the search previously conducted by the airline employee:
[The laminating machine and materials for laminating identification cards] were not items with respect to which the officers had had any previous information, and they were therefore not objects with respect to which [defendant] had already had his expectations of privacy frustrated. There is no evidence that these items were in plain view when the officers arrived or that [the airline employee] had discovered them prior to that time.
....

*492 We hold therefore that the search of the suitcase that produced these last items was unconstitutional and that the motion to suppress should have been granted to this extent.
[Id. at 1041-42.]
In this case, there is sufficient evidence to support the trial court's finding that the seizure of defendant's bag by the motel owner and his employees and the delivery of the bag to the investigators was purely private action. According to Investigator Dennis McKelvey, the member of the investigating team to whom the bag was handed, the owner of the motel provided the bag "on his own," without being directed or requested to bring it to the investigators. Moreover, although somewhat confusing, the motel owner's testimony was not inconsistent with McKelvey's account of the delivery of the bag.
However, even though the seizure and delivery of the bag to the investigators was purely private action, the trial court erred in concluding that "when the bag was delivered to the investigators, ... it was theirs to do with as they saw fit." Instead, as Walter, Jacobsen and Rouse clearly establish, the investigator's search of the bag could not exceed the scope of the private search previously conducted by the motel owner and his employees. The bag was closed when the motel owner handed it to the investigators, and Sergeant Burke had to open the zipper to gain access to its contents, including the pants with the victim's bloodstains. This search of the bag exceeded the scope of any invasion of defendant's privacy by the motel owner and his employees and therefore required a warrant unless the circumstances of the search fell within an exception to the warrant requirement.
The State argues that Sergeant Burke's examination of the bag did not exceed the scope of the private search of defendant's belongings because "the private search already involved a search of the clothes." In support of this contention, the State relies upon the motel owner's testimony that the maid who cleaned defendant's room told him that "[defendant] left ... one bag and some clothes that were there." The State infers from this statement that defendant's pants were not in the bag when it was found by the maid, or that she looked in the bag and saw defendant's clothing inside. However, the maid did not testify at the suppression hearing, and the motel owner was never directly asked whether the maid told him she had put defendant's clothing and other belongings in the bag or looked inside the bag. Furthermore, the motion judge did not find that the maid had seen defendant's clothing, and we question whether the existing record could support such a finding. Therefore, we reject the State's argument that the search can be upheld on the ground that Sergeant Burke's examination of the bag did not exceed the scope of the private search.
We also reject the trial court's suggestion that the warrantless search of the bag can be upheld on the basis of exigent circumstances because the investigators had not located defendant when the search was conducted and the bag could have contained information that would have enabled the investigators to locate him. The State did not attempt to defend the validity of the search on this basis, and Sergeant Burke testified that but for the fact that he considered defendant's bag to have been abandoned, he could and would have obtained a search warrant within a short period of time:
Q. So you were bound and determined to find out the contents of that bag, correct?
A. Yes.

*493 Q. And there was two ways that you could have done that. Either watched the bag so it wouldn't go anywhere, hold it in a police officer's custody and go to a magistrate either by phone or in person and get a warrant to search that bag. That was oneone avenue for you to take, wasn't it?
A. Yes.
Q. And that could have been very easily done. You've done it before, haven't you?
A. Yes, sir.
Q. And there was no impediment in your way to stop you from getting a magistrate's permission, either a Judge of the Superior or Municipal Court to give you a consent to search that bag or give you a warrant to search that bag, correct?
A. That's correct.
Q. And you, on your own, decided that that was not necessary because you made the legal decision that the property was abandoned. Is that what you're telling us?
A. Yes.
Therefore, based on the existing record, the search of the bag without a warrant cannot be upheld on the basis of exigent circumstances.See Mincey v. Arizona, 437 U.S. 385, 392-94, 98 S.Ct. 2408, 2413-14, 57 L.Ed.2d 290, 299-301 (1978).
The State argues that even if the search cannot be sustained under the trial court's rationale, we should affirm the suppression order because the record shows that defendant abandoned his shoulder bag and its contents in the motel room. As previously noted, this was the State's primary argument at the suppression hearing. However, the trial court declined to rule on this argument. Moreover, the trial court did not make findings with respect to certain disputed facts relevant to this argument, including whether defendant called the motel and said he would be returning to pick up his bag during the thirty-three hour period between when he checked out and when the motel owner delivered the bag to the investigators, and if such a telephone call was made, whether the motel owner told the investigators about the call before Sergeant Burke unzippered the bag. Thus, it would not be appropriate for us to consider the State's abandonment argument until the motion judge makes these findings of fact. Accordingly, the case must be remanded to the trial court for such findings and reconsideration of defendant's motion in light of those findings.[1]
On the remand, the State or defendant may move, if appropriate, to supplement the record. See State v. Reldan, 100 N.J. 187, 203-07, 495 A.2d 76 (1985); State v. Williamson, 270 N.J.Super. 318, 322-23, 637 A.2d 195 (App.Div.), aff'd, 138 N.J. 302, 650 A.2d 348 (1994). If such a motion is granted, and additional evidence is presented relating to the State's private search argument, the trial court also may reconsider this argument in light of that additional evidence.
Finally, we conclude substantially for the reasons stated by the trial court that the inevitable discovery doctrine does not apply under the circumstances of this case. Therefore, there is no need for further consideration of that argument on the remand.
If the court reaffirms the denial of defendant's motion to suppress, it also *494 must make findings with respect to the amount of the VCCB penalty imposed on defendant and reconsider that penalty in light of those findings. See State v. Swint, 328 N.J.Super. 236, 264, 745 A.2d 570 (App.Div.) ("[I]f the assessments imposed in favor of the VCCB exceed the statutory minimum, the judge must express his reasons for imposing them"), certif. denied, 165 N.J. 492, 758 A.2d 651 (2000); see also State v. Gallagher, 286 N.J.Super. 1, 23, 668 A.2d 55 (App.Div.1995), certif. denied, 146 N.J. 569, 683 A.2d 1164 (1996); State v. Pindale, 249 N.J.Super. 266, 289, 592 A.2d 300 (App.Div.1991). In addition, the State properly concedes that the $30 Law Enforcement Officers Training and Equipment Fund assessment imposed upon defendant must be vacated. The effective date of the legislation imposing this assessment was January 9, 1997, L. 1996, c. 115, and defendant was convicted of an offense committed on December 6, 1996. See State v. Dela Rosa, 327 N.J.Super. 295, 303, 743 A.2d 336 (App.Div.), certif. denied, 164 N.J. 191, 752 A.2d 1293 (2000).
Accordingly, the order denying defendant's motion to suppress is vacated and the case is remanded to the trial court for further proceedings in conformity with this opinion. The remand shall be completed by April 26, 2002. Jurisdiction is retained.
NOTES
[1] We express no opinion as to whether those findings would be dispositive with respect to the abandonment issue.