**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1309-16T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANTHONY R. COLEMAN,

    Defendant-Appellant.

_____

Argued August 14, 2018 — Decided August 21, 2018

Before Judges Messano and Geiger.

On appeal from Superior Court of New Jersey,
Law Division, Camden County, Indictment No.
15-01-0198.

Elizabeth C. Jarit, Assistant Deputy Public
Defender, argued the cause for appellant
(Joseph E. Krakora, Public Defender, attorney;
Elizabeth C. Jarit, of counsel and on the
brief).

Steven A. Yomtov, Deputy Attorney General,
argued the cause for respondent (Gurbir S.
Grewal, Attorney General, attorney; Steven A.
Yomtov, of counsel and on the brief).

PER CURIAM

Defendant Anthony R. Coleman appeals from a March 18, 2016 conviction of second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b), contending the trial court erred by denying his motion to suppress evidence seized without a search warrant from his locker at work. We affirm.

We derive the following facts from the record on appeal. On September 29, 2014, an anonymous caller alerted both the Pennsauken Police Department and defendant's employer, Menu Foods, Inc., that defendant had a loaded handgun in his locker at Menu Foods. The anonymous tip to Menu Foods was received by Sheila Campbell, its Human Resources Manager. In turn, Campbell called the police and verified the police were also aware of the anonymous tip. The police told Campbell they could not act on the call or search the locker because it involved private property. The police suggested the locker search by company personnel be conducted in the presence of a police officer for safety purposes. Campbell requested the police be present when employees of Menu Foods attempted to retrieve the handgun.

Officer Jeffrey Dinoto was dispatched to Menu Foods, where he spoke to John Morris, Menu Foods' director of operations. Accompanied by maintenance manager Will Hughes and operations manager Daniel Wynn, Morris and Dinoto proceeded to the employee locker room. Defendant had two lockers. As Dinoto stood by,

Hughes used bolt cutters to cut off the lock and open the first locker but no firearm was found inside. Hughes then cut the lock off of defendant's second locker, which contained a backpack. Morris removed the backpack and placed it on a bench. The backpack made a "distinctive thud" when placed on the bench as if "something very heavy" was inside of it. Morris reached inside the backpack and removed a .380 caliber semi-automatic handgun loaded with ten hollow point bullets and four ball rounds of ammunition. Morris handed the gun to Dinoto. After securing the weapon, Dinoto returned to police headquarters. Defendant was not present when the lockers were opened; he was at his work station.

A grand jury charged defendant with second-degree unlawful possession of a handgun (count one); third-degree receiving stolen property, N.J.S.A. 2C:20-7(a) (count two); and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b) (count three).

Defendant moved to suppress the handgun. The motion judge conducted an evidentiary hearing. Four witnesses testified. Wynn testified the lockers were Company property and were subject to inspection when necessary. The State introduced two documents into evidence: an Employment Policies & Work Rules Handbook (the Handbook) and a signed Handbook Acknowledgment Form, affirming defendant had received a copy of the Handbook and that he

understood that he should read it and become familiar with it. Defendant signed the form as a condition of his employment. The Handbook contains a "No Weapons Policy," which provides:

> Weapons are prohibited on Company property, in Company buildings, or in Company vehicles. Weapons are prohibited in lockers, desks, workspaces, storage areas, and employee vehicles and on an employee's person, or in employee's personal belongings (e.g., brief case, backpacks, purses, and wallets, etc.) whenever on Company property or elsewhere when performing work on behalf of the Company. Weapons may include, but ARE NOT LIMITED TO guns. . . .

The Handbook further provides:

> In enforcing the policy, Menu [Foods] reserves the right to search Company property including lockers, desks, workspaces, storage areas, etc. and any items located on Company property whether they belong to the Company employees, contractors or visitors.

The Handbook also contains a Workplace Violence Policy, which states: "Menu Foods employees have a responsibility to take steps to ensure a safe work environment for all employees and visitors."

Defendant argued that the locker and backpack searches were unconstitutional because they amounted to state action for which probable cause was lacking. Defendant claimed there was sufficient involvement or participation by police to qualify as state action because the police had knowledge the employer would conduct the search and the search was conducted in a police officer's presence.

The State argued that the mere presence of a police officer did not constitute state action because the officer was only present for safety purposes to take custody of the weapon if one was found and render it safe. Alternatively, the State argued defendant had no reasonable expectation of privacy in his locker or his backpack, while on Company property, in light of Menu Foods' right to search the locker and its contents pursuant to its No Weapon Policy.

In a written opinion, the motion judge denied the motion, finding defendant was "not entitled to Fourth Amendment protection, because he had no reasonable expectation of privacy in the contents of his workplace locker." The judge noted defendant's acknowledged familiarity with the contents of the Handbook. Thus, defendant "knew that his locker and personal belongings could be subject to search."

The motion judge further noted that "[w]hen private actors act on their own, Fourth Amendment protections do not apply." Instead, "Fourth Amendment protections are only implicated when there is state action involved in a search or seizure." Recognizing mere police presence while a private party is engaging in a search does not make it a state search, the motion judge found "there is no indication here that the Menu Foods employee acted 'at the behest or suggestion, with the aid, advice or

encouragement, or under the direction or influence' of the Pennsauken police department." (quoting United States v. Clegg, 509 F.2d 605, 609 (5th Cir. 1975)). On the contrary, the motion judge found once Campbell confirmed the anonymous tip regarding the gun on Company property had also been reported to police, Menu Foods "already knew [it was] going to search the locker." The judge then recounted how the decision to search was carried out:

> Menu Foods initiated the search and the police offered to be present to ensure the safety of their employees, but Menu Foods did not initiate the search acting as an agent of the State. Menu Foods employees cut the lock, opened the defendant's backpack, and revealed the presence of the firearm.

Additionally, the motion judge concluded suppressing the results of the search would not deter the State from using private parties to engage in illegal searches.

Following the denial of his motion to suppress, defendant entered into a plea agreement with the State, pleading guilty to count one in exchange for a recommended sentence of five years imprisonment, subject to a forty-two-month period of parole ineligibility and dismissal of the remaining charges. On March 18, 2016, defendant was sentenced in accordance with the negotiated plea agreement. This appeal followed.

Defendant raises the following issues on appeal:

THE WARRANTLESS SEARCH OF COLEMAN'S LOCKED
WORK LOCKER AND CLOSED BACKPACK VIOLATED HIS
CONSTITUTIONAL RIGHTS, REQURING SUPPRESSION.

A.  Because Coleman had a possessory
    interest in his locker and backpack,
    the State was required, but failed,
    to demonstrate an exception to the
    warrant requirement in order to
    justify the search; whether Coleman
    had a reasonable expectation of
    privacy was the incorrect inquiry
    because courts have long-recognized
    an expectation of privacy in the
    workplace.

B.  The search of Coleman's locker and
    backpack amounted to state action.

C.  The trial court's factual findings
    are unsupported by the record and
    deserve no deference.

"When reviewing a trial court's decision to grant or deny a suppression motion, [we] 'must defer to the factual findings of the trial court so long as those findings are supported by sufficient evidence in the record.'" State v. Dunbar, 229 N.J. 521, 538 (2017) (quoting State v. Hubbard, 222 N.J. 249, 262 (2015)). "We will set aside a trial court's findings of fact only when such findings 'are clearly mistaken.'" Ibid. (quoting Hubbard, 222 N.J. at 262). "We accord no deference, however, to a trial court's interpretation of law, which we review de novo." Ibid. (citing State v. Hathaway, 222 N.J. 453, 467 (2015)).

"The New Jersey and Federal Constitutions guarantee the rights of persons to be free from unreasonable searches and

seizures." State v. Coles, 218 N.J. 322, 337 (2014) (citing N.J. Const. art. I, ¶7; U.S. Const. amend. IV). However, the constitutional prohibition against unreasonable searches and seizures applies only to governmental action. State v. M.A., 402 N.J. Super. 353, 367 (App. Div. 2008) (citing State v. Evers, 175 N.J. 355, 368-69 (2003)); State v. Premone, 348 N.J. Super. 505, 511 (App. Div. 2002) (citing United States v. Jacobsen, 466 U.S. 109, 113 (1984); State v. Saez, 139 N.J. 279, (1995)). "It is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as the agent of the Government or with the participation or knowledge of any governmental official." State v. Navarro, 310 N.J. Super. 104, 107 (App. Div. 1998) (citations omitted); see generally 1 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment (5th ed. 2012) § 1.8.

Following our review, we conclude defendant's argument lacks evidentiary support. First, the record does not support defendant's characterization of the search as a product of state action. Although managerial employees of Menu Foods and the police were simultaneously present during the search, no evidence shows police prompted, directed, encouraged, or influenced the conduct of Hughes or Morris.

For state action to exist, facts must support "tacit cooperation" between police and the third-party. State v. Stelzner, 257 N.J. Super. 219, 230 (App. Div. 1992). In addition, the act must be prompted by the State. Here, the record amply supports the conclusion that the actions by Hughes and Morris were independently motivated by Menu Foods' legitimate safety concerns over the presence of a loaded firearm on Company property. There is no indication that Menu Foods' employees acted "at the behest or suggestion, with the aid, advice or encouragement, or under the direction or influence" of the police. Clegg, 509 F.2d at 609. On the contrary, the police stated to Campbell that they would not act on the anonymous tip or search the locker because it involved private property. By that point Menu Foods had already decided to search defendant's locker. Moreover, although the results of the private search were turned over to the police, the police did not expand the scope of the private search. See Premone, 348 N.J. Super. at 512.

Second, with respect to the actions of his private employer, defendant had no objectively reasonable expectation of privacy in his locker and items placed within his locker. The clear and unambiguous terms of his employer's No Weapon's Policy rendered defendant's locker and its contents subject to search by his employer. Indeed, defendant concedes this case "does not concern

whether, given the policy, [defendant] had a reasonable expectation of privacy against intrusions by his private employer."

Finally, once the handgun was located, the actions of the police in securing the handgun constituted a reasonable exercise of their community caretaking functions "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Navarro, 310 N.J. Super. at 108 (quoting Cady v. Dombroski, 413 U.S. 433, 441 (1973)). There was nothing unreasonable in the actions of the police which resulted in the seizure of the handgun after it was removed from the backpack by Morris.

For the reasons outlined above, we affirm the denial of the motion to suppress and the conviction that followed defendant's guilty plea.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1309-16T1