**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3152-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ALEXANDER EIDEN,

    Defendant-Appellant.

_____

Submitted April 21, 2026 – Decided June 17, 2026

Before Judges Gilson and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 23-07-1514.

Robert Carter Pierce, attorney for appellant.

Theodore N. Stephens II, Essex County Prosecutor, attorney for respondent (Lucille M. Rosano, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

    This appeal arises out of a fatal automobile collision during which a car driven by defendant Alexander Eiden struck the side of a car driven by Christine

Perrella and the force of the collision caused injuries resulting in the tragic death of Perrella. Following the collision, defendant was indicted for two crimes and ultimately pled guilty to second-degree causing death by reckless operation of an automobile, N.J.S.A. 2C:11-5(a). He appeals from the denial of his motion to suppress evidence seized in accordance with four warrants. Having reviewed the record and law, we affirm the order denying his motion to suppress and, therefore, his conviction.

I.

Just before 10 a.m. on January 9, 2023, a motor vehicle driven by defendant hit the side of a vehicle driven by Perrella. Officers from the Roseland Police Department responded to the scene, which was near 101 Eisenhower Parkway in Roseland. Defendant had been operating a BMW M5, traveling southbound on Eisenhower Parkway when his BMW struck the passenger side of a Nissan Rogue operated by Perrella. Perrella had been traveling northbound and was attempting a left-hand turn into her place of employment when her vehicle was struck by defendant's vehicle. As a result, Perrella's vehicle traveled over the curb line, and came to rest facing southwest from the point of impact. Perrella was transported to the hospital and died from her injuries. The airbags in defendant's vehicle deployed and he was not seriously injured.

2

At approximately noon, the Essex County Prosecutor's Office (ECPO) Crime Scene Investigation Bureau was informed of the accident, responded, and took over the investigation. The investigation at the scene revealed: (1) the BMW had suffered "extreme [] front end damage"; (2) the airbags in the BMW had deployed; (3) the Nissan Perrella had been driving "came to rest approximately 175 feet facing southwest from the point of impact;" (4) the Nissan "suffered severe damage to the passenger side door, which . . . resulted in the doors caving in to the passenger cabin;" (5) the front tire of the Nissan "was dislodged and came off upon impact;" and (6) as a result of the damage the Nissan sustained, Perrella had to be extracted from the vehicle.

On January 10, 2023, Detective Angelica Barnes applied for a warrant to search defendant's BMW. The warrant certification was captioned "Investigation into the Death of Christine Perrella," and included the code "VH-2023-03." Barnes began her certification by listing her credentials and training, as well as her general responsibilities. In that regard, she stated that she had completed several crash investigation courses and was "responsible for conducting [c]rash [i]nvestigations that have resulted in serious bodily injury or death."

3

Next, Barnes stated that she had "been assigned to assist in the investigation of a fatal crash on January 9, 2023, in the area [of] 101 Eisenhower Parkway . . . in which [] Perrella . . . was struck and killed." The certification then listed the following facts:

a. On Monday, January 9, 2023, at approximately 12:11[p.m.], the Essex County Prosecutor's Office Crime Scene Investigation Bureau received notification from the Roseland Police Department regarding a dual motor vehicle collision, which resulted in the death of [] Perrella near 101 Eisenhower Parkway in Roseland, New Jersey.

b. Around 9:59[a.m.], Roseland Police Department officers had responded to the scene. A 2019 BMW M5 –[registration number] – [V.I.N. number] was being operated by [defendant] when it struck the decedent's vehicle, a 2012 Nissan Rogue – [registration number] – [V.I.N. number].

c. [Defendant] was traveling southbound on Eisenhower Parkway and the decedent was navigating a left-hand turn (westbound) into 101 Eisenhower Parkway when her vehicle was struck on the passenger side. This caused the decedent to lose directional control of the car, travel over the curb line, and come to a final rest facing nominally south. Additionally, airbags were deployed in the 2019 BMW M5.

d. Both vehicles were transported to the Essex County Prosecutor's Office – Crime Scenes Investigation Bureau in Orange, New Jersey pending further processing and mechanical inspections.

4

e. The decedent was transported to St. Barnabas Medical Center, but ultimately succumbed to her injuries.

f. [Defendant] remained on scene and possess[ed] valid driving credentials.

Barnes also stated she had not included "each and every fact known to [her] concerning this investigation," but only those facts that she believed were "necessary to establish probable cause" to search defendant's vehicle. She further attested "that there is probable cause to believe that evidence of [the] incident is contained within the [defendant's vehicle]." Lastly, Barnes described the scope of the search to be conducted. Accordingly, she stated:

> The purpose and scope of this search is to recover evidence of the incident. This evidence would include but [is] not [] limited to fingerprints, DNA and other forensic evidence, documents pertaining to ownership of the vehicle and operation of it during the time of the collision, any evidence pertaining to the manner in which the vehicle was being driven during the collision, including cell phone use and alcohol or drug use. . . . This search is also requested to include any event data recorder systems, electronic communications devices located within the vehicle[], and/or installed "infotainment systems." In addition, a mechanical inspection is sought to determine if any mechanical malfunctions contributed to this crash, and a search of the event data recorder or black box to ascertain speed, braking, and other data available related to the vehicles near the time of the crash.

A-3152-24

On January 10, 2023, a Superior Court judge granted the search warrant. During the ensuing search, detectives obtained the Event Data Recorder (EDR), or "black box," from defendant's vehicle. Using crash data retrieval software, detectives learned defendant's vehicle had been traveling at 103 miles per hour (mph) seconds before the crash. The anti-lock brake system activity showed defendant applied the brakes one second before the crash, and on impact, defendant's vehicle was traveling seventy-four (74) mph. Additionally, the search of defendant's vehicle revealed that his BMW was equipped with an Escort M2 Dash Camera, but that its secure digital card was missing.

On January 13, 2023, Barnes sought three additional warrants, two of which were communication data warrants (CDW), to search and obtain information from defendant's: (1) cell phone, (2) Apple iCloud account, and (3) T-Mobile cellular data records. In the three certifications submitted for the additional warrants, Barnes set forth all the facts she had provided in her first certification and added other information. First, as additional information, Barnes identified the crime she was investigating: "the potential crime[] of Death by Auto – driving a vehicle . . . recklessly pursuant to N.J.S.A. 2C:11-5." Second, she certified that the warrant to search the BMW had been granted, but she did not disclose what information had been discovered. Third, she added

certain facts related to each application, including that the investigation had revealed defendant used an iPhone 14 pro max, and there was a dash camera - ESCORT M2 Dash Camera - in the BMW, with its secure digital card missing. Barnes then explained why the State was seeking access to defendant's iPhone, Apple iCloud account, and T-Mobile cellular data records.

In terms of the scope of access to defendant's Apple iCloud account, the third warrant sought:

> full subscriber information; service dates; registration information including registration ip; cellular telephone numbers; linked and related email addresses; mail logs; password logs and other service accounts with authorized access to account; ip address at account creation; ip logs; all inbound and outbound ports associated with said ip addresses; stored imessage, sms, and mms messages; any and all other icloud content, including: all ios icloud backups in an unencrypted format; mail logs; photos and videos stored in icloud and photostream; docs stored in icloud drive, pages, and other associated applications on icloud; notes saved to icloud and in backups; calendar(s) saved to icloud and in icloud backups; bookmarks and safari browsing data stored to icloud and in backups; contacts stored to icloud and in backups; voicemails stored in icloud and in ios backups; find my iphone data; find my friends data; customer service records including reports of abuse and or violations of Apple terms of service; and any information located on servers or in databases owned or controlled by Apple, Inc., or located within any business documents or files associated with the above-mentioned user, from JANUARY 1, 2023 - JANUARY 13, 2023, in a timely fashion from Apple,

7

Inc. in order to obtain evidence of the specified crimes as well as aid in the identification and location of parties involved in said illegal activities.

The scope of the fourth warrant concerning defendant's T-Mobile account sought information, including:

> the content of any and all SMS messages received and sent from said cellular telephone facility number, billing records [] including payment information and source/means of payment, customer service records, subscriber information for said cellular telephone facility number and for all numbers called to and called from said cellular telephone facility number, IP address logs associated with internet access from said cellular telephone facility, and the make and model and/or MSID/IMSI or ESN/IMEI of the handset(s) assigned to said cellular telephone facility, from January 8, 2023 through the duration of this order.

On January 13, 2023, another Superior Court judge granted all three search warrants. Seven months later, on July 27, 2023, defendant was indicted by a grand jury for two crimes: first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1) (count one); and second-degree death by auto, N.J.S.A. 2C:11-5(a) (count two).

On March 15, 2024, defendant moved to suppress the evidence obtained from the searches of his vehicle, cell phone, Apple iCloud account, and T-Mobile data. Defendant asserted that all four warrants were facially deficient because they presented insufficient facts to establish probable cause. He also

8

argued that the CDWs for his iCloud and T-Mobile data were overbroad. In response, the State contended that while the warrant applications could have included more facts, the facts presented were sufficient to establish probable cause and defendant failed to overcome the warrants' presumed validity. Alternatively, the State asserted the evidence discovered using the warrants would have inevitably been discovered because if any of the warrant applications had been rejected, the State would have resubmitted the application with additional facts gathered from the on-scene investigation.

After hearing argument, the trial court denied defendant's motion in an oral decision placed on the record on September 4, 2024. Initially, the trial court reasoned the validity of the cell phone warrant and CDWs depended on whether the first warrant to search defendant's vehicle was valid. In that regard, the court noted "if the [c]ourt were to find an issue with the first [warrant] then there would be an issue with the second and the CDWs." The trial court then discussed the warrant application for defendant's vehicle and found that "while the affidavit was rather skimpy . . . [the judge who granted the warrant] certainly could have reasonably inferred from the facts that were included that [defendant] was speeding, which would have caused or contributed to this accident."

9

Accordingly, the court found that the first warrant application contained enough facts to establish probable cause and the warrant was valid.

Next, the court discussed the applicability of the inevitable discovery doctrine. The court found that, alternatively, the State had shown by "clear and convincing evidence," the information obtained through the search of defendant's vehicle would have inevitably been discovered through the course of normal investigatory procedures. The court noted that had the initial warrant application been denied, the State "had ample additional information that they could have . . . added to the affidavit which would have . . . had nothing to do with post securing the search warrant." In that respect, the court listed the additional facts the State could have included in its warrant application, detailing the facts obtained from the on-scene investigation of the crash. Therefore, that same day, the trial court entered an order denying defendant's motion to suppress.

On March 24, 2025, defendant pled guilty to count two of the indictment, second-degree death by auto. In the plea agreement he preserved his right to appeal the denial of his motion to suppress. In exchange for the plea, the State recommended defendant be sentenced in the third-degree range to a four-year prison term subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

On May 19, 2025, defendant was sentenced in accordance with the plea agreement to four years in state prison subject to NERA. Count one of the indictment was dismissed. Defendant now appeals from the order denying his motion to suppress the information obtained from the four search warrants.

II.

On appeal, defendant makes three main arguments, which he articulates as follows:

> POINT 1 – THE TRIAL COURT ERRED BY DENYING [DEFENDANT'S] MOTION TO SUPPRESS EVIDENCE OBTAINED USING THE MOTOR VEHICLE SEARCH WARRANT WHICH FAILED TO STATE PROBABLE CAUSE TO ALLOW THE SEARCH.
>
> POINT II – THE TRIAL COURT ERRED IN APPLYING THE INEVITABLE DISCOVERY DOCTRINE TO SUSTAIN THE SEARCH WARRANT OF [DEFENDANT'S] MOTOR VEHICLE.
>
> POINT III – THE CELLULAR PHONE WARRANT, AND THE APPLE AND T-MOBILE COMMUNICATION DATA WARRANTS ARE UNCONSTITUTIONAL AND ALL EVIDENCE MUST BE SUPPRESSED.
>
> A. No information contained in the cellphone search warrant affidavit established probable cause.
>
> B. The iCloud and T-Mobile communications data warrants were likewise unconstitutional.

11

Generally, in reviewing an order on a motion to suppress, an appellate court will defer to the factual findings made by the trial court "so long as those findings are supported by sufficient evidence in the record." State v. Smart, 253 N.J. 156, 164 (2023) (quoting State v. Dunbar, 229 N.J. 521, 538 (2017)).  When the facts are undisputed, however, we review the trial court's interpretation of "the law on a non-testimonial motion to suppress . . . de novo."  Ibid.  That de novo review is consistent with an appellate court's plenary review of legal determinations.  State v. Radel, 249 N.J. 469, 493 (2022) (quoting State v. Hathaway, 222 N.J. 453, 467 (2015)).

A.    Whether the Warrants Were Supported by Probable Cause.

The federal and New Jersey Constitutions protect people from unreasonable governmental searches.  Smart, 253 N.J. at 164-65; State v. Bryant, 483 N.J. Super. 13, 29 (App. Div. 2025) (quoting U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7).  There is a presumption that a governmental search is reasonable if it is conducted pursuant to a judicial warrant based on probable cause.  State v. Gathers, 234 N.J. 208, 220 (2018); State v. Sullivan, 169 N.J. 204, 211 (2001).  A valid warrant requires "probable cause to believe that a crime has been committed, or is being committed" and that the place, thing, or

data to be searched contains evidence of the crime.  Sullivan, 169 N.J. at 210; State v. Missak, 476 N.J. Super. 302, 316 (App. Div. 2023).

It is well established that when making a probable cause determination, the issuing judge "is required to make the determination based on only that information which is 'contained within the four corners of the supporting affidavit' or sworn testimony provided by law enforcement personnel."  State v. Chippero, 201 N.J. 14, 26 (2009).  "Probable cause eludes precise definition." Ibid. (quoting Sullivan, 169 N.J. at 210).  "Probable cause has been aptly described as 'a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'"  Id. at 27 (quoting United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993)).  "The standard 'deals with probabilities and depends on the totality of circumstances.'"  Ibid. (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)).  Accordingly, issuing courts can consider "all relevant circumstances," Gathers, 234 N.J. at 221 (quoting State v. Keyes, 184 N.J. 541, 554 (2005)), and "reasonable and natural inferences" flowing from those circumstances.  State v. Evers, 175 N.J. 355, 384 (2003).

A search warrant enjoys a presumption of validity.  State v. Bivins, 226 N.J. 1, 11 (2016); State v. Marshall, 199 N.J. 602, 612 (2009).  So, a defendant

challenging the validity of a search bears the burden of proving "there was no probable cause supporting the issuance of the warrant." State v. Jones, 179 N.J. 377, 388 (2004).

"[S]ubstantial deference must be paid by a reviewing court to the determination of the judge who has made a finding of probable cause to issue a search warrant." Evers, 175 N.J. at 381. Any "[d]oubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" Keyes, 184 N.J. at 554 (quoting Jones, 179 N.J. at 389). "[W]hen the adequacy of the facts offered to show probable cause . . . appear[] to be marginal, the doubt should ordinarily be resolved by sustaining the search." State v. Kasabucki, 52 N.J. 110, 116 (1968) (first citing United States v. Ventresca, 380 U.S. 102, 109 (1965); and then citing State v. Mark, 46 N.J. 262, 273 (1966)).

Defendant in this matter focuses his analysis on the first warrant, which authorized a search of his BMW. He contends the warrant did not contain a specific reference to the crime being investigated nor did it contain facts supporting probable cause that defendant had committed a crime in causing the collision.

Barnes' first certification did not expressly state in the certification itself that the prosecutor's office was investigating a crime. Nevertheless, a review of

the certification in totality supports probable cause for a search of the BMW. The certification was labeled as "Investigation into the Death of Christine Perrella." Moreover, the facts set forth by Barnes demonstrate that the prosecutor's office was investigating whether defendant had caused the death by recklessly driving his vehicle. A review of the facts in Barnes' certification allowed the issuing judge to infer that the prosecutor's office was investigating whether defendant had been speeding or been on his cell phone at the time of the accident. Indeed, the clearest inference was that defendant had been speeding because Barnes' set forth facts explaining that Perrella's vehicle had been propelled by the force of the collision across the curb and down a roadway where it came to rest at a ninety-degree angle from the direction it had been traveling when struck by defendant's BMW. In short, there were sufficient facts from which the issuing judge could find probable cause that defendant had been speeding at the time of the accident, the speeding contributed to causing Perrella's death, and there was reason to believe that information in the BMW would reveal whether defendant had been speeding.

Obviously, the better practice would have been for Barnes to have expressly stated the facts supporting that defendant had been speeding. In that regard, the investigation at the scene showed that Perrella's vehicle had been

15

driven down the roadway 175 feet before it came to rest. We note, moreover, that there are limits to what can be inferred from a warrant certification and that the better practice is for the affiant to expressly state the facts establishing probable cause. We also point out that an affiant's declaration that she or he believes there is probable cause for the warrant is not a substitution for the judge's determination of probable cause. All that said, an evaluation of the totality of the facts set forth in Barnes' first certification supported probable cause for the issuance of the warrant to search defendant's vehicle.

Having determined that there was probable cause supporting the first warrant, we also hold that there was probable cause supporting the three other warrants. Each of those three additional warrant certifications expressly identified that the prosecutor's office was investigating the crime of death by auto. Those warrants also provided more facts related to the investigation and the items or data sought to be searched. While Barnes still did not expressly state that the prosecutor's office had facts supporting a belief that defendant had been speeding, that inference can be readily drawn from the facts that were set forth in those three additional certifications.

B.    The Inevitable Discovery of the Information Obtained from the Warrants.

As an alternative ground for its ruling, the trial court also found that even if the warrants had been defective, the State would have inevitably discovered the information by other lawful means. That alternative finding is supported by the substantial credible evidence in the record and is consistent with the law.

Normally, evidence seized in violation of the warrant requirement must be suppressed. State v. Holland, 176 N.J. 344, 353-54 (2003). "The inevitable discovery doctrine may be invoked to preserve 'the admissibility of evidence obtained without a warrant or a valid exception to the warrant requirement.'" Bryant, 483 N.J. Super. at 41 (quoting State v. Camey, 239 N.J. 282, 301 (2019)). "When 'the evidence in question would inevitably have been discovered without reference to the police error or misconduct,' thereby negating any taint, the inevitable discovery doctrine allows for its admissibility." Id. at 41-42 (quoting State v. Sugar, 108 N.J. 151, 156 (1987)).

For the exception to apply, the State must show by "clear and convincing evidence" that:

> (1) proper, normal and specific investigatory procedures would have been pursued in order to complete the investigation of the case; (2) under all of the surrounding relevant circumstances the pursuit of those procedures would have inevitably resulted in the

discovery of the evidence; and (3) the discovery of the evidence through the use of such procedures would have occurred wholly independently of the discovery of such evidence by unlawful means.

[Id. at 42 (quoting State v. Maltese, 222 N.J. 525, 552 (2015)).]

The inevitable discovery exception "does not require 'the State [to] demonstrate the exact circumstances of the evidence's discovery.'" Camey, 239 N.J. at 302 (alteration in original) (quoting Maltese, 222 N.J. at 552). Instead, the State may demonstrate the evidence would have eventually been discovered based on the totality of "the evidence understood in light of ordinary experience and common sense." Sugar, 108 N.J. at 163.

In this matter, the only facts missing from the warrant certifications submitted by Barnes were the facts showing that defendant probably had been speeding. In other words, as already explained, Barnes' certification in support of each of the applications for the four warrants set forth facts showing that there had been a collision in which defendant's car had struck Perrella's vehicle on its passenger side, the force of the collision sprung Perrella's vehicle down the road, and as a result she died from her injuries. If Barnes had simply added the distance that Perrella's vehicle had moved—175 feet—and the statement that all the other evidence gathered at the scene, supported that defendant's vehicle had

A-3152-24

been speeding at the time of the collision, those facts would have established probable cause without the need for any inference. The same reasoning applies to the other three warrant certifications.

Had the first issuing judge declined to sign the warrant, the State would have inevitably submitted a new warrant application including the facts concerning the distance Perrella's car moved after the collision. The record established that the information was already available to the State based on the investigation at the scene. Consequently, the same evidence would have been discovered independent of the first warrant because a separate warrant would have been issued on a certification with additional facts.

Defendant argues the inevitable discovery doctrine cannot be invoked to uphold a search "merely because evidence of probable cause could have supported securing a warrant." In making that argument, defendant relies on language from State v. Premone, 348 N.J. Super. 505 (App. Div. 2002). The discussion of the inevitable discovery doctrine in Premone is distinguishable from this case and does not support defendant's argument. There, detectives investigating a murder conducted a warrantless search of the defendant's bag left in a motel room and found bloody clothes. Id. at 509. At a suppression hearing, the trial court rejected the State's contention that the detectives could have

19

secured a warrant based on available evidence as circular, and we agreed. <u>Id.</u> at 510, 515. Here, as already discussed, Barnes sought and secured a search warrant before searching defendant's vehicle, unlike the detectives in <u>Premone</u>. Therefore, the facts and issues discussed in <u>Premone</u> are distinguishable from the argument defendant makes in this matter.

Usually, when the State needs to prove something by clear and convincing evidence, an evidentiary hearing is required. In this case, however, we determine that an evidentiary hearing was not necessary. Defendant does not dispute the facts disclosed from the investigation of the scene of the collision. As already explained, with a few additional facts, Barnes' certification would have set forth all the facts needed to directly establish probable cause even without an inference. Under these circumstances, it is not necessary to remand this matter for an evidentiary hearing because the conclusion of that hearing is clear.

C.    The Scope of the CDWs.

Finally, defendant argues that the CDWs were overbroad and, therefore, unconstitutional. In addition to being supported by probable cause, a valid warrant must be particularized in identifying the searches to be conducted. <u>Zurcher v. Stanford Daily</u>, 436 U.S. 547, 565 (1978); <u>Facebook, Inc. v. State,</u>

254 N.J. 329, 340, 346 (2023). The purpose of the particularity requirement is to prevent "general" and "wide-ranging exploratory searches." Marshall, 199 N.J. at 611 (quoting Maryland v. Garrison, 480 U.S. 79, 84 (1987)).

In this matter, the warrants for defendant's iCloud and T-Mobile data sufficiently described the places to be searched. Nevertheless, defendant contends that the information sought was overbroad. The warrant for defendant's iCloud account included requests for "notes saved to iCloud . . . calendar(s) saved to iCloud . . . bookmarks and safari browsing data stored to iCloud . . . voicemails . . . find my iPhone data; [and] find my friend data." Similarly, the warrant for defendant's T-Mobile data requested "billing records including [] payment information and source/means of payment . . . subscriber information for said cellular telephone facility number and for all numbers called to and called from said cellular telephone facility number."

While some of that information was overly broad, there is no showing that the information was obtained. More to the point, defendant's plea was not based on any of the alleged overbroad information. Instead, he pled guilty because he had been recklessly driving by speeding. Consequently, there is no basis to reverse the order denying his motion to suppress because two of the warrants were overly broad. Accordingly, in the context of this case, we determine that

21

defendant's overbreadth argument is not a basis to reverse the order denying his motion to suppress.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division