**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1614-15T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TYLEEK A. LEWIS,

     Defendant-Appellant.

_____

Submitted December 5, 2018 - Decided January 28, 2019
Remanded by the Supreme Court June 23, 2020
Resubmitted June 23, 2020 - Decided July 28, 2020

Before Judges Koblitz, Ostrer and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 14-08-0877.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael James Confusione, Designated Counsel, on the brief).

Scott A. Coffina, Burlington County Prosecutor, attorney for respondent (Nicole Handy, Assistant Prosecutor, of counsel and on the briefs).

Appellant filed a pro se supplemental brief.

PER CURIAM

Our Supreme Court in <u>State v. Greene</u>, ___ N.J. ___, ___ (2020) remanded this matter on June 23, 2020 for our consideration of the following five issues raised by defendant Tyleek A. Lewis through counsel:

> <u>POINT II</u>: THE PROSECUTOR WENT BEYOND FAIR COMMENT ON THE EVIDENCE IN SUMMATION.
>
> <u>POINT III</u>: THE TRIAL COURT ERRED IN ADMITTING THE WAWA VIDEOTAPE INTO EVIDENCE.
>
> <u>POINT IV</u>: THE TRIAL COURT INFRINGED DEFENDANT'S RIGHT TO DISCOVERY AND CROSS-EXAMINATION.
>
> <u>POINT V</u>: THE TRIAL COURT ERRED IN DENYING A POST-VERDICT INTERVIEW OF A COMPROMISED JUROR.
>
> <u>POINT VI</u>: DEFENDANT'S SENTENCE IS IMPROPER AND EXCESSIVE.

We also consider the single issue defendant argues in his pro se supplemental brief:[1]

> <u>POINT I</u>: IT WAS REVERSIBLE ERROR FOR THE JUDGE TO FAIL TO INSTRUCT THE JURY ON ACCOMPLICE LIABILITY, ESPECIALLY IN

---

[1] We corrected minor typographical errors.

A-1614-15T1

LIGHT OF THE JURY'S QUESTION SIGNALING
ITS CONFUSION.

We incorporate the facts as set forth by the Supreme Court. Greene, ___ N.J. at ___ (slip op. at 5-8). Defendant was convicted, after judicial merger, of one count of felony murder by participating in the murder of Edward Baker during the commission of a robbery and burglary, N.J.S.A. 2C:11-3(a)(3). He was sentenced simultaneously with his co-defendant Carey R. Greene to thirty-five years in prison with a thirty-year period of parole ineligibility subject to the requirements of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. We now affirm defendant's conviction and remand only to correct the judgment of conviction.

## I. Prosecutor's Summation.

Defendant argues that the assistant prosecutor's repeated statements to the jury that a trial is a "search for the truth" deprived him of a fair trial. Defendant also argues that the assistant prosecutor's incorrect statement during summation that a pendant had been taken from the victim without an immediate curative instruction constitutes reversible error. We disagree.

"The State's opening statement should be 'limited to the "facts [the prosecutor] intends in good faith to prove by competent evidence."'" Greene, ___ N.J. at ___ (slip op. at 21) (alteration in original) (quoting State v.

Wakefield, 190 N.J. 397, 442 (2007)). The opening statement is "intended to serve as 'an outline' or a 'roadmap' or a 'general recital' of the case the State intends to present." Ibid. (quoting State v. Walden, 370 N.J. Super. 549, 558 (App. Div. 2004)). "[T]he court must patrol the boundaries of propriety [of a prosecutor's opening statement] to ensure that [a] defendant's right to a fair trial is not compromised." Id. at ___ (slip op. at 22) (second and third alterations in original) (quoting State v. Timmendequas, 161 N.J. 515, 577 (1999)).

During summation, a prosecutor is limited to "commenting upon the evidence and the reasonable inferences to be drawn therefrom," however, the presentation is allowed to be forceful and vigorous. State v. Pindale, 249 N.J. Super. 266, 285 (App. Div. 1991). A prosecutor is given leeway, but comments must be reasonably related to the evidence adduced at trial. State v. Frost, 158 N.J. 76, 82 (1999). A prosecutor can make inferences based upon the evidence but cannot go beyond the facts of the case. State v. R.B., 183 N.J. 308, 330 (2005). "[A] determination as to whether a prosecutor's comments had the capacity to deprive defendant of a fair trial must be made 'within the context of the trial as a whole.'" State v. McNeil-Thomas, 238 N.J. 256, 276 (2019) (quoting State v. Feaster, 156 N.J. 1, 64 (1998)).

During opening statements, the prosecutor stated:

> And I submit to you, ladies and gentlemen, that through the expanse of this evidence that's going to be presented to you over the course of the next few weeks, you are going to also see something else and it's what I call the thread of truth. You're going to see the thread of truth through each piece of evidence and each witness that you hear from. And this is very important because it has been said that a trial, the reason why we're here, is a search for the truth.

Defense counsel objected, citing to State v. Love, 245 N.J. Super. 195, 198-99 (App. Div. 1991) (analyzing whether the jury charge violated defendant's due process rights because it diluted the State's burden of proof), but the objection was overruled by the court. During the remainder of his opening statement, the prosecutor referred to "truth" nine more times. At the conclusion of his opening statement, he stated: "I just ask you, ladies and gentlemen, listen carefully, search for that thread of truth throughout the entire State's case."

During summation, the assistant prosecutor again referred to "truth":

> The reason why we are here, and I told you this in my opening, this trial is a search, and it's a search for the truth. And if you recall during my opening, I called it the thread of truth. And that's what I want to talk to you about. What is the truth?

> Because ultimately, you as triers of these facts have to, have to make a decision on what is the truth. How do we get to that truth? How do we know what the truth is?

He said "truth" many more times in his summation. However, he also stated in summation: "And basically what you need to know before we look for this search for the truth of what happened on that night, you need to know that . . . the State is required to prove each of these elements beyond a reasonable doubt."

After the prosecutor's summation, defense counsel renewed the objection to the use of the word "truth," arguing it lessened the State's burden. He requested a curative instruction. The trial court ruled that because the State explained that it was required to prove beyond a reasonable doubt all elements of the crimes, a curative instruction was not needed. It held that the assistant prosecutor's reference to "truth" did not dilute the State's burden and that the jury would be given full instructions.

Pursuant to the model jury charges, the court instructed the jury that the State must prove each element of every crime charged beyond a reasonable doubt. See Model Jury Charges (Criminal), "Felony Murder – Non-Slayer Participant (N.J.S.A. 2C:11-3(a)(3))" (rev. Mar. 22, 2004); Model Jury Charges (Criminal), "Robbery in the First Degree (N.J.S.A. 2C:15-1)" (rev. May 10, 2010); Model Jury Charges (Criminal), "Burglary in the Second Degree (N.J.S.A. 2C:18-2(b))" (rev. Apr. 12, 2010).

In cases where there have been references to the "truth" by the trial court, our Supreme Court has not reversed. For example, in State v. Purnell, 126 N.J. 518, 544 (1992), the trial court advised the jury to "search for the truth" as part of the jury instructions. It also informed the jury of the State's burden to prove its case beyond a reasonable doubt. Ibid. While the Court was concerned regarding the court's use of the term "search for truth" because it could dilute the State's burden of proof, the Court affirmed because the jury was correctly instructed about the presumption of innocence and the State's burden of proof. Id. at 545.

In Love, we rejected an argument by the defendant that the court's comment during jury instructions that it was tasked with ascertaining "the truth on the evidence" was improper. Love, 245 N.J. Super. at 198-99; see also State v. Medina, 147 N.J. 43, 54 (1996) (rejecting defendant's argument that the State's burden was diluted because the court instructed the jury to "search for truth"). In State v. Hunt, 115 N.J. 330, 372-73 (1989), the Court rejected the defendant's argument, similar to the argument made here, that the State's burden was diluted because the prosecutor told the jury that it had a duty to determine "where the truth rests." Although the prosecutor repeated the "search for truth"

phrase many times, the trial court corrected any misunderstanding by clearly instructing the jury about the burden of proof.

Defendant also argues that the prosecutor misled the jury during summation by claiming that a pendant had been taken from the victim, and that the court failed to issue a timely curative instruction.

During summation the assistant prosecutor stated:

> Let's talk about this Jesus pendant. What's the significance of that? In and of itself, not really too much significance. But it's the broken clasp, it's the broken clasp that has the significance here. Doesn't it? Isn't that indicative of some sort of struggle?
>
> [Counsel for defendant] tried to bring out on his cross-examination well, maybe it was the EMS guys cutting, cutting open [the victim's] shirt. But the chain, where's the chain that that pendant hung on? I'll tell you where it's not, it's not in the house. It's gone.

Defendant's counsel requested a curative instruction and asked that the instruction be provided on the same day that the false statement was made. The court provided the instruction the next time the jury convened, two days later.

During the jury charge, the court gave a remedial instruction:

> Further, the prosecutor during summations referenced the Jesus pendant and clasp found at the crime scene. The prosecutor asked "where's the chain" and further stated that the chain was "not in the house." Any inference that the chain was stolen by the defendants must be ignored by you in your deliberations. The

8

chain was recovered from the body at the autopsy and is in the possession of the prosecutor's office.

During summation, a prosecutor should not make inaccurate legal or factual assertions and is duty-bound to confine remarks to the facts adduced at trial. Frost, 158 N.J. at 85. When evaluating a claim of prosecutorial misconduct, a reviewing court should first determine if the prosecutor committed misconduct and then evaluate whether the misconduct requires a new trial. Wakefield, 190 N.J. at 446.

The assistant prosecutor misstated a fact when he said that the chain was missing. The comment was inaccurate, but did not have the effect of diverting the jury's attention from the facts before it or inflaming the jury. The court provided a complete and effective curative instruction regarding the prosecutor's misstatement. The court clearly informed the jury that the chain was in fact recovered from the victim's body and was in the possession of the prosecutor's office. We assume that jurors follow instructions. State v. Miller, 205 N.J. 109, 126 (2011).

The assistant prosecutor made the incorrect statement at the end of the day on Wednesday and the court provided the curative instruction the next time that the court met with the jury, on Friday. It is true that curative instructions should

be provided "without delay," State v. Vallejo, 198 N.J. 122, 134 (2009), but we do not view the instruction as unduly delayed.

Prosecutorial misconduct "does not warrant reversal unless it is 'so egregious that it deprived the defendant of a fair trial.'" State v. Jackson, 211 N.J. 394, 409 (2012). Reversible error occurs when a prosecutor makes a comment so prejudicial that it deprives a defendant of his or her right to a fair trial. Id. at 437. The inaccurate statement here was not egregious. "A defendant is entitled to a fair trial, but not a perfect one." Wakefield, 190 N.J. at 537 (quoting Lutwak v. United States, 344 U.S. 604, 619 (1953)).

## II. Videotape.

Defendant contends the court erred when it admitted the Wawa surveillance videotape into evidence. He claims the State failed to demonstrate that the date and time stamp on the video were accurate and, also, failed to explain who provided the video to the police and when.

The court conducted an authentication hearing outside the presence of the jury. Heather Hearn, a senior security advisor at Wawa, testified that in 2010 Wawa recorded security footage on a VCR. At that time, the cameras and equipment included a date stamp on the video. The store manager was responsible for ensuring the date stamp was accurate and, aside from the store

manager, no other employees could alter the date stamp. Hearn recognized the video in the present case as a Wawa security video based on the color labels and the information on the video.

Zachary Knauss, a shift manager at Wawa, testified that he worked at the Westampton store in July 2010. He provided the surveillance video to Westampton Township Police Officer Andrew Brewer at 3:39 a.m. on July 17, 2010. Brewer testified that he obtained the July 16, 2010 surveillance video from the Wawa and turned it over to Detective Sergeant Roger Rogers at headquarters.

The tape received from Brewer was placed into the Westampton Township evidence depository. Only Rogers and one other detective had access to it. On July 27, 2010, Rogers took the video from the evidence locker and gave it to Patrolman Thomas Polite at police headquarters. Polite took the video and secured it in his office. Polite testified that he reviewed the Wawa tape looking for the hat and shoe recovered at the crime scene. He located individuals in the Wawa video wearing those items.

Detective Timothy Horne, an evidence management custodian with the Burlington County Prosecutor's Office, testified that his office received a video tape from a Westampton police department detective. The video had a sticker

11

on it, stating it was a surveillance video from Wawa. He placed it with the rest of the evidence for this case in the evidence storage vault, which could only be accessed by members of the evidence management unit. Evidence must be signed in and out, and the location is secure.

The trial court found that the video was a Wawa surveillance tape from July 16, 2010, from approximately 9:40 p.m. to 10:00 p.m. The court was satisfied that the chain of custody and time stamping of the video had been established in accordance with N.J.R.E. 901 and was admissible.

N.J.R.E. 901 states: "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must present evidence sufficient to support a finding that the item is what its proponent claims." Authentication occurs when the court conducts a screening process to decide whether a sufficient basis exists, leaving to the jury the final assessment as to whether the item is actually authentic. Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 901 (2020). "The rule does not require absolute certainty or conclusive proof." State v. Mays, 321 N.J. Super. 619, 628 (App. Div. 1999).

Properly authenticated videotapes are admissible. State v. Loftin, 287 N.J. Super. 76, 98 (App. Div. 1996). "[A] trial court's evidentiary rulings are

entitled to deference absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment." State v. Nantambu, 221 N.J. 390, 402 (2015) (alteration in original) (quoting State v. Harris, 209 N.J. 431, 439 (2012)).

Here, the court properly determined that the video was authenticated under N.J.R.E. 901. The court heard testimony from Wawa employees and the police demonstrating the chain of custody. The court personally viewed the tape to confirm that it depicted the evening of July 16, 2010, based on the time stamp. Where a surveillance camera films a crime, or the events leading up to or following a crime, the authenticity foundation can be laid circumstantially. See Loftin, 287 N.J. Super. at 98-99. "All that is required for authenticity is proof that the matter is what its proponent claims." Id. at 99. The court did not abuse its discretion in allowing the Wawa video into evidence.

## III. Discovery.

Defendant argues that the court infringed on his right to obtain discovery and cross-examine witnesses when it rejected his argument that the assistant prosecutor failed to produce all investigatory discovery about the victim, Baker. He contends that the assistant prosecutor did not provide discovery related to an investigation of a drug dealer named Durrell Whitmore and drug activity at Baker's home.

A-1614-15T1

The court independently reviewed the discovery that defendant requested and found it unconnected to the murder. One reference in the Whitmore reports referred to Baker's nickname "Dough Boy" and indicated that Baker was a friend of Whitmore. Also, a reference was made to surveillance conducted at Baker's home for a particular car. The court explained that these references were an insufficient basis to justify turning over information connected to an investigation of Whitmore.

A court's denial of a discovery request is reviewed under an abuse of discretion standard. State v. Enright, 416 N.J. Super. 391, 404 (App. Div. 2010). Defendant offers no support for his allegations that a third party was responsible for Baker's death or that exculpatory evidence was presented in the reports. Defendant's argument is based solely on conjecture. "[A]lthough defendants are entitled to broad discovery under Rule 3:13-3, they are not entitled to turn the discovery process into a fishing expedition." State v. Broom-Smith, 406 N.J. Super. 228, 239 (App. Div. 2009). The court did not abuse its discretion in denying defendant access to the Whitmore investigation.

### IV. Post-Verdict Juror Interview.

Defendant argues that the court erred when it declined to grant his co-defendant Greene's request for a post-verdict interview of a juror, necessitating

a new trial. Greene's mother returned home after the verdict was rendered, looked out her window, and saw juror six talking with the person who lived across the street. She also believed that she may have observed the neighbor dropping juror six off at the courthouse. Greene filed a motion to interview juror six to determine why she did not disclose her relationship with Greene's mother's neighbor.

Greene's attorney hired a private investigator who confirmed with the neighbor that she was a close friend of juror six and did drive her to the courthouse. Greene's attorney alleged that juror six's failure to disclose her friendship affected whether counsel would have exercised a preemptory challenge during jury selection. Greene was concerned that because his father was "killed under untoward circumstances" and his mother had an arrest record, the juror could have been exposed to this prejudicial information because "people talk."

Greene's counsel conceded that she lacked any specific information that the juror knew that Greene's mother lived in the same neighborhood. Greene's investigator's report stated that the neighbor did not know any details about juror six's case, the neighbor did not know the case involved her neighbor's son, and the juror never discussed the case with her. In fact, according to the report, it

was only after the verdict was rendered that the neighbor heard that Greene's mother was related to one of the men found guilty.

The court denied Greene's request for a post-verdict hearing regarding juror six. It explained that granting such a request is an extraordinary measure. The connections were "too speculative and too tangential for the [c]ourt to grant an interview."

A criminal defendant is entitled to an impartial jury. State v. Papasavvas, 163 N.J. 565, 584 (2000). Asking a juror to return to court for an interview after a verdict has been rendered and he or she has been discharged is an "extraordinary procedure which should be invoked only upon a strong showing that a litigant may have been harmed by jury misconduct." State v. Harris, 181 N.J. 391, 503 (2004) (quoting State v. Athorn, 46 N.J. 247, 250 (1966)).

"[I]t is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." Smith v. Phillips, 455 U.S. 209, 217 (1982). Instead, a defendant receives due process when a jury is capable and willing to decide the case based solely upon the evidence presented at trial. Ibid.

A high bar is placed on a party seeking to interview a juror after the jury has been discharged. State v. DiFrisco, 174 N.J. 195, 241 (2002). The high standard is required to "prevent juror harassment and avoid chilling jury

16

deliberations." Ibid. The trial court appropriately chose not to call back juror six for an interview based on the evidence that Greene's mother's neighbor was a friend, especially given that the juror was apparently unaware of the connection until after the verdict was rendered. Significantly, defendant was not involved with the application to interview the juror, nor implicated in any information juror six might have had.

## V. Sentence.

We review a sentence using the abuse of discretion standard of review. State v. Roth, 95 N.J. 334, 363-64 (1984). The sentencing court is required to qualitatively weigh the aggravating and mitigating factors. State v. Case, 220 N.J. 49, 65 (2014). The weight given to each is a "function of its gravity in relation to the severity of the offense." Roth, 95 N.J. at 368.

A reviewing court is limited to determining: if the sentencing guidelines were followed; if there was competent credible evidence to support the findings that were the basis for the sentence; and if the trial court came to an unreasonable conclusion. State v. Natale, 184 N.J. 458, 489 (2005). It can vacate the sentence if it "shocks the judicial conscience." State v. Cassady, 198 N.J. 165, 181 (2009). The sentencing court is given wide discretion if the sentence imposed is within the statutory framework. State v. Dalziel, 182 N.J. 494, 500 (2005).

On September 21, 2015, the court sentenced defendant during the same hearing and at the same time as Greene. The court allowed Baker's family and Greene's mother to speak. Defendant's mother spoke on his behalf. Defendant maintained he did not kill Baker. The court reviewed the essential facts of the case while addressing both Greene and defendant simultaneously.

The court analyzed the mitigating and aggravating factors for both defendant and Greene at the same time. As to defendant, the court applied aggravating factors three, the risk of re-offense, and nine, the need for deterrence, giving those factors substantial weight. N.J.S.A. 2C:44-1(a)(3) and (9). As to factor three, the court concluded that both men failed to take responsibility for their conduct. As to factor nine, the court explained that there is a need to deter both defendants and others from engaging in similar conduct and that the seriousness of the killing showed there was a need to deter both defendants from similar conduct in the future.

The court applied mitigating factor six because defendant was directed to pay restitution. N.J.S.A. 2C:44-1(b)(6). The court orally concluded that it would apply mitigating factor eleven to defendant, but his judgment of conviction does not reflect this finding. N.J.S.A. 2C:44-1(b)(11). We order mitigating factor eleven to be reflected on the judgment of conviction, as

consented to by the State. We also direct that the judgment be corrected to reflect that this was not a negotiated plea but a jury trial and that the final charge was count one, felony murder, only. The court merged the other counts into count one. The court did not abuse its discretion in sentencing defendant to thirty-five years in prison, thirty without parole.[2]

The court sentenced defendant and Greene simultaneously rather than individually, a procedure not in line with the sentencing requirement that aggravating and mitigating circumstances be considered for every defendant individually. "[E]ach '[d]efendant is entitled to [an] individualized consideration during sentencing.'" State v. Jaffe, 220 N.J. 114, 122 (2014) (second and third alterations in original) (quoting State v. Randolph, 210 N.J. 330, 349 (2012)); see also N.J.S.A. 2C:1-2(b)(6); State v McFarlane, 224 N.J. 458, 469 (2016) (remanding for resentencing after sentencing judge stated in an unrelated proceeding that "a judge 'always' sentences defendants convicted of first-degree murder to sixty years in prison"); State v. McDuffie, 450 N.J. Super. 554, 577 (App. Div. 2017) (noting that a "'one size fits all analysis' falls short

---

[2] The court added an eighty-five percent parole ineligibility provision and a five-year period of parole supervision under NERA to the sentence. The parole ineligibility does not appear to have any practical ramifications because the thirty-year mandatory parole ineligibility is greater than eighty-five percent of thirty-five years.

of the specific findings required when imposing sentencing"). Defendant did not object to this unusual sentencing process at the hearing or on appeal, and we think the court sufficiently discriminated between defendants when imposing sentencing. However, it is not an approved procedure and could easily lead to confusion and mistake.

## VI. Accomplice Liability Charge.

Defendant contends as plain error in his pro se supplemental brief that the court erred by failing to instruct the jury on accomplice liability because the jury indicated that it was confused during deliberations. Defendant argues that had the jury been properly instructed, it may have returned a guilty verdict for robbery, but not for felony murder. He also argues that the jury was not instructed on lesser-included offenses.

The court and counsel held a lengthy charge conference during which the entire charge was discussed. The court observed on the record that none of the parties requested an accomplice liability charge during the charge conference. During the jury charge, the court provided instructions regarding the four offenses charged in the indictment. As part of the instructions for robbery felony murder the court stated:

> Under this law, it does not matter which of the defendants who had participated in the robbery actually

20

shot and killed Edward Baker. Nor does it generally matter that the act which caused the death was committed recklessly or unintentionally or accidentally. Each participant in the crime of robbery, whether the participant himself caused the death or not, would be guilty of felony murder.

Similarly, as part of the charge for burglary felony murder, it stated:

Under this law, it does not matter which of the defendants who had participated in the burglary actually shot and killed Edward Baker. Nor does it generally matter that the act which caused the death was committed recklessly, or unintentionally or accidentally. Each participant in the crime of burglary, whether the participant himself caused the death or not, would be guilty of felony murder.

After the charge, Greene's counsel reminded the court in a side-bar that the counsels for defendants did not want the jury charged on the lesser-included offenses and that lesser-included offenses were not included on the verdict sheet.

Nevertheless, Greene's counsel was concerned that the jury instructions could be interpreted to convict defendants of lesser-included offenses. To alleviate any concerns by defendants that the jury would mistakenly believe that defendants could be found guilty of lesser-included offenses, the court explained to the jury that defendants were not indicted for the lesser-included offenses of second-degree robbery or third-degree burglary.

21

On the second day of deliberations, the jury submitted a note to the court, which stated:

> We understand that to be guilty of felony murder robbery, you do not have to be the person who actually shot the person but can be found guilty by association. Is the same true for felony murder burglary or does each person have to enter the residence?

In response, the court re-read the relevant jury instructions. The court also reminded the jury that a separate verdict should be rendered for each defendant and that each case should be decided individually.

The jury's question caused the defense to request additional jury instructions. Greene's counsel wanted an instruction about how there cannot be "guilt by association" for any of the charges. The State suggested providing an accomplice liability charge. Initially, Greene's counsel agreed with the State and defendant's counsel seemingly joined in that request at that time, but later Greene's counsel opposed an accomplice liability charge. The court observed that no one brought up an accomplice liability charge during the charge conference. Ultimately, the court did not provide the accomplice liability charge, but rather instructed the jury further about "guilt by association" by stating:

> In reference to this note, the [c]ourt recharged you on the principles of multiple charges where there is more

than one defendant and felony murder burglary. The [c]ourt now takes this opportunity to further respond to the statement guilt by association. There is no guilt by association. In your determination of whether the State has proven beyond a reasonable doubt each and every element of the offenses charged, defendants are entitled to have each count considered separately by the evidence which is relevant and material to that particular charge based on the law as I have given it to you.

You must also return separate verdicts for each defendant as to each of the charges being tried. In other words, you will have to decide each case individually. Whether the verdict as to each defendants [sic] are the same depends on the evidence and your determination as judges of the facts.

Neither defendant objected to this charge.

"It is a well-settled principle that appropriate and proper jury charges are essential to a fair trial." State v. Savage, 172 N.J. 374, 387 (2002). A jury charge sets up a "road map to guide the jury" and must explain the law to the jury in the context of the material facts of the case. Ibid. (quoting State v. Martin, 119 N.J. 2, 15 (1990)). A jury charge must be reviewed in its entirety to determine the overall effect. Ibid. If a defendant fails to object to the jury charge, the court may hold, pursuant to Rule 1:7-2, that he or she waived the right to challenge the jury instruction on appeal. State v. Afanador, 151 N.J. 41, 54 (1997).

23

Because this issue was not raised below, defendant must show plain error "clearly capable of producing an unjust result." Ibid.; R. 2:10-2. In the context of a jury charge, plain error has been defined as "[l]egal impropriety . . . prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." Ibid. (alteration in original) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)). Errors in criminal jury instructions are "excusable only if they are harmless beyond a reasonable doubt." State v. Vick, 117 N.J. 288, 292 (1989).

Defense counsel did not complain that the court failed to charge the jury with accomplice liability and did not file a motion seeking a new trial on the basis that the court should have provided an accomplice liability charge. Moreover, counsel did not object to the charge that the court provided to the jury about "guilt by association." The court provided the jury with clear and comprehensive instructions that satisfied the concerns of the defendants regarding the jury's use of the term "guilty by association" in its note.

"Only if the record clearly indicates a lesser-included charge—that is, if the evidence is jumping off the page—must the court give the required instruction." State v. Funderburg, 225 N.J. 66, 81-82 (2016) (quoting State v.

<u>Denofa</u>, 187 N.J. 24, 42 (2006)).  Defendant strategically asked the court not to charge lesser-included offenses.  As a result, defendant's argument on appeal that the court should have nevertheless advised the jury on lesser-included offenses is rejected.  Defendant "cannot beseech and request the trial court to take a certain course of action, and upon adoption by the court, take his chance on the outcome of the trial, and if unfavorable, then condemn the very procedure he sought and urged, claiming it to be error and prejudicial."  <u>State v. Jenkins</u>, 178 N.J. 347, 358 (2004) (quoting <u>State v. Pontery</u>, 19 N.J. 457, 471 (1955)). "[W]hen a defendant asks the court to take his proffered approach and the court does so, [the Court has] held that relief will not be forthcoming on a claim of error by that defendant."  <u>Ibid.</u>

We affirm the convictions and remand only to correct the judgment of conviction by adding mitigating factor eleven, eliminating the statement that it was a negotiated plea and reflecting the merger decision that defendant is guilty of one count of felony murder only.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION